[No. E001723. Fourth Dist., Div. Two. May 16, 1986.]

PARK REDLANDS COVENANT CONTROL COMMITTEE,
Plaintiff and Respondent, v.
RICHARD L. SIMON et al., Defendants and Appellants.

90

COUNSEL

Marshall Miles for Defendants and Appellants.

Wynn & Wingfield and Robert L. Goodrich for Plaintiff and Respondent.

OPINION

McDANIEL, J.—The action in the trial court was brought to enforce two features of a restrictive covenant recorded in connection with approval by the City of Redlands of a particular subdivision development, Park Redlands. The complaint against Richard Simon and his wife (defendants) was filed by Park Redlands Covenant Control Committee (plaintiff), a creature of the Park Redlands Homeowners' Association, comprised of the residents of this development. Their grievance was that defendants, as a result of having their two adult children and a grandchild live with them periodically, were in violation of two restrictive covenants limiting residents of the development to those aged forty-five and over and fixing the maximum number of occupants per residence at three.

Besides answering plaintiff's complaint, defendants cross-complained for declaratory relief, seeking an interpretation of the validity of the two re-

strictions noted plus interpretation of the validity of four other covenants in the recorded declaration of restrictions. The trial court decreed the injunction as prayed, i.e., by enjoining the two adult children and the grandchild from residing with defendants until the former had attained the age of forty-five years and further by enjoining "more than three (3) persons, including [defendants] . . . from permanently or regularly residing in their said premises." Only by implication did the trial court's judgment declare the validity of the four other covenants also challenged by the cross-complaint.

Defendants appealed, challenging the permanent injunction and the adverse declaration of rights. We shall reverse that part of the judgment which operates to enforce the age and occupancy restrictions against defendants and affirm it otherwise.

## FACTS

The facts are essentially undisputed. In 1979, Richard and Betty Simon purchased a home in the Park Redlands subdivision in the City of Redlands. The Simons have 2 grown children, a 31-year-old daughter, who is married and has a small child, and a 26-year-old son. The daughter and grandchild followed a pattern of returning intermittently to live with the Simons for varying periods of time; evidently, the daughter's husband travels extensively, and she fears being alone with the child while he is away. The son has returned home occasionally to live with defendants while attending a local college, and his visits have overlapped those of his sister.

Park Redlands is a unique housing development in that 41 of the 44 houses in the development are approximately 900 to 1,000 square feet and are placed on approximately 5,500 square foot lots, considerably smaller than the minimum size (8,000 square feet) otherwise regularly required in residential developments in the City of Redlands. The remaining three houses, which include the Simons', are constructed on more standard, one-quarter acre lots (approximately) and contain 2,000 square feet (approximately). In order to build this miniaturized subdivision, the original developer obtained a special use permit from the city. The developer also recorded a package of restrictions which attached to all lots in the development; it is certain of these restrictions which the trial court decreed enforceable against defendants with which they take exception on this appeal.

Plaintiff Park Redlands Covenant Control Committee, a subunit of the Park Redlands Homeowners' Association, sought to enforce against the

Simons two provisions contained in a single paragraph of the restriction, which in pertinent part reads: "3. Residence and Age Requirements . . . This project is designed and intended for the use and residence of persons who have attained age 45. The number of residents in a unit shall be no more than three (3). Guests may visit, but not reside in a unit. A visit shall be considered a period of up to sixty (60) days per year." In the Simons' cross-complaint, they sought to have paragraph 3, above, as well as paragraphs 18, 19, 21, and 23 of the restrictions declared invalid.

Paragraph 18 gives plaintiff the power to declare a breach of the restrictions ". . . pursuant to its sole discretion exercised in accordance with Paragraph 4 [which provides that discretion must be '. . . exercised in good faith and independent of the grantees . . .'']," as well as power to record a notice of breach on the property affected, and power to institute a lawsuit to remedy the breach. This paragraph also requires the grantee against whom legal action is instituted to pay for costs and attorneys' fees incurred by the committee in enforcing. No claim was made for attorneys' fees in this case.

Paragraph 19 gives plaintiff essentially the same power to institute legal actions and collect attorneys' fees where an owner fails to obey a written directive (enforcing a restriction) of plaintiff.

Paragraph 21 gives plaintiff power to determine ". . . in its sole discretion . . . whether work is . . . reasonably necessary . . ." to preserve the value of a unit or yard. The committee gives written notice to the owner, and if the defects aren't remedied within 30 days, the committee will cause the work to be done and assess against the lot for the charges incurred.

Paragraph 23 sets out standards for usage of "units," banning activity increasing the rate of insurance on the "total building" without written consent of adjoining owners. Activity that impairs structural integrity of "the building" as well as offensive or nuisance activity is also banned.

DISCUSSION

Defendants contend that the age and occupancy restrictions, as applied to them, are violative of the Unruh Civil Rights Act and the California constitutional right of privacy, respectively. They also attack paragraphs 18, 19, 21 of the restrictions as violative of federal due process standards, and attack paragraph 23 as invalid because not for the benefit of adjoining property owners.

I

VALIDITY OF THE AGE RESTRICTION UNDER THE UNRUH ACT

██     Defendant argues that the restriction requiring all people residing in Park Redlands to be 45 years or older is invalid under the Civil Code section 53,[1] part of the Unruh Civil Rights Act. We agree.

██     Plaintiff's first point here is that the Unruh Act only operates to outlaw discrimination by *business enterprises,* and, because Park Redlands Homeowners Association is not such an enterprise, no limitation is created by the act. Not so. The California Supreme Court in *O'Connor* v. *Village Green Owners Assn.* (1983) 33 Cal.3d 790 [191 Cal.Rptr. 320, 662 P.2d 427], squarely held that a condominium homeowners' association is a business within the purview of the act, stating: "A theme running throughout the description of the association's powers and duties is that its overall function is to protect and enhance the project's economic value. Consistent with the Legislature's intent to use the term 'business establishments' in the broadest sense reasonably possible [citation], we conclude that the Village Green Owners Association is a business establishment within the meaning of the act." (*Id.,* at p. 796.) Although the business *responsibilities* discharged by a condominium homeowners' association and a tract housing homeowners' association of the kind here involved may be somewhat different, both have a similar economic function making them indistinguishable as *business establishments.*

██     In response to defendant's challenge to the validity of the age restriction, plaintiff argues that the age restriction is one in favor of a minority class, individuals over 45, and is socially necessary to meet the needs of senior citizens.

---

[1]Civil Code section 53 reads: "(a) Every provision in a written instrument relating to real property which purports to forbid or restrict the conveyance, encumbrance, leasing, or mortgaging of such real property to any person of a specified sex, race, color, religion, ancestry, or national origin, is void and every restriction or prohibition as to the use or occupation of real property because of the user's or occupier's sex, race, color, religion, ancestry, or national origin is void. [¶] (b) Every restriction or prohibition, whether by way of covenant, condition upon use or occupation, or upon transfer of title to real property, which restriction or prohibition directly or indirectly limits the acquisition, use or occupation of such property because of the acquirer's, user's, or occupier's sex, race, color, religion, ancestry, or national origin is void. [¶] (c) In any action to declare that a restriction or prohibition specified in subdivision (a) or (b) of this section is void, the court takes judicial notice of the recorded instrument or instruments containing such prohibitions or restrictions in the same manner that it takes judicial notice of the matters listed in Section 452 of the Evidence Code."

■ Plaintiff misconstrues the function of the Unruh Act. It prohibits arbitrary discrimination, both benign and improperly intentioned, against minorities or majorities. ■ Furthermore, to bring age discrimination under the one exception to the Unruh Act as yet sanctioned by California courts, the discrimination must occur (1) to meet the special needs of senior citizens, and (2) it must take place in the context of housing designed especially for the elderly. (*Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 742-743 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].) The presence of neither of these factors has been demonstrated here.

First, it must come as some surprise to those 45 years of age to find themselves classified as senior citizens. When the Director of the Community Development Administration of the City of Redlands was asked on direct examination why this age cut-off was chosen, the following colloquy developed:

"Question. What is your opinion at this time as to the reasonableness as to the restriction to individuals of age 45 or greater?

"Answer. I—for different opinions, it could be 50—A.R.P. is 50 now—it could be 55.

"Question. In your opinion is it [a] reasonable restriction?

"Answer. Well, 45 is probably—because that's usually beyond the age that people have children, so—"

It appears that the age 45 was chosen not to facilitate special needs of the elderly, but solely to engage in impermissible discrimination against children and families with children. (*Marina Point, Ltd.* v. *Wolfson, supra,* 30 Cal.3d 721, 745.)

Finally, nowhere in the record is it shown that the single family homes in Park Redlands are designed as specialized facilities for the elderly. Attributes of housing especially designed for the elderly include ". . . more and wider walkways with fewer stairs, an interior and exterior designed to permit easy social contact, provision for common rooms, short distances between buildings, easy refuse collection, light maintenance and well-lighted walkways and halls . . . ." (*Wolfson, supra,* at p. 742, fn. 10.) In response to the trial court's question, "What does this development consist of?" the director responded, ". . . I guess you call it a miniature single family subdivision. 44 Units. Lots are smaller . . . . Set-backs are less; the parking is less. The idea being that it was geared for less intense use of the property."

Thus, the foregoing demonstrates that Park Redlands is not a specialized facility for the elderly; thus, the age restriction is patently violative of the Unruh Act, and therefore unenforceable.

## II

## VALIDITY OF LIMITATION ON NUMBER OF RESIDENTS

Defendants contend this restriction violates the right of privacy enunciated in *City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219]. The subissues which this contention imports are (1) the scope of the right of privacy upon which *Adamson* is based, (2) whether the right of privacy thus enunciated is violated by this restriction and (3) whether the right of privacy can be violated by enforcement of a private restrictive covenant.

### A. *Scope of the Right of Privacy Enunciated by Adamson*

On this first subissue, the scope of the California constitutional right of privacy, plaintiff's strongest argument is that the right of privacy upon which the zoning ordinance in *Adamson* ran aground is a right which prevents *discrimination* against nonfamily living groups, in favor of family groups, limiting the number of people who can live in a house, rather than a right which proscribes limitations upon the numbers of people who can choose to live together. This argument fails as we shall explain.

In *Adamson,* the City of Santa Barbara had enacted an ordinance which limited the use of homes in one-family, two-family and multiple-family residence zones to families, defined as (1) "An individual, or two (2) or more persons related by blood, marriage or legal adoption living together as a single housekeeping unit" or (2) "A group of not to exceed five (5) persons, excluding servants, living together as a single housekeeping unit." (*Id.,* at p. 127.)

Just before discussing the nature of the restrictions which the ordinance imposed, the court stated in its opinion, "Valid laws can, of course, be written to help promote and protect values that family life enhances. The question in this case is whether that kind of law may deny to individuals who are not family members certain benefits that family members enjoy." (*Id.,* at p. 128.) This statement is the source of plaintiff's argument. Given this formulation, one would expect a court to discuss *discrimination,* most likely in the context of an equal protection or Unruh Act analytical framework. The court did not. To the contrary, immediately after discussing the

provisions of the ordinance and possible exceptions, the court reformulated the question facing it: "Do the ordinance's restrictions, with those three exceptions, respect the commands of the California Constitution concerning people's rights to enjoy life and liberty, to possess property, and to pursue and obtain happiness and privacy?" (*Id.*, 27 Cal.3d at p. 129.)

The court then defined the right of privacy, saying "The court in *White* v. *Davis* [13 Cal.3d 757 (120 Cal.Rptr. 94, 533 P.2d 222)] quoted these words from 'a statement drafted by the proponents of the provision [that added "privacy" to the California Constitution] and included in the state's election brochure' [citation]: '"The right of privacy is the right to be left alone. *It is a fundamental and compelling interest.* It protects our *homes,* our *families,* our thoughts, our emotions, our expressions, our personalities, our *freedom of communion,* and our *freedom to associate with the people we choose* . . . . [¶] The right of privacy is an important American heritage and essential to the fundamental rights guaranteed by the First, Third, Fourth, Fifth and Ninth Amendments to the U.S. Constitution. *This right should be abridged only when there is a compelling public need. . . .*"' (Italics added.)" (*Id.*, at p. 130.) The rest of the opinion was devoted to the strict scrutiny analysis required for incursions upon fundamental constitutional rights, and held that the Santa Barbara ordinance could not stand.

The right of privacy which was the basis of attack on the *Santa Barbara* "rule of five" (no more than five unrelated people could live together in a single dwelling unit) is thus broadly defined. The Supreme Court in *Adamson* italicized relevant portions of the voter's pamphlet, and the passages italicized were those which define the right of privacy involved as one protecting homes, families, freedom of communion, and freedom to associate with the people one chooses. This expansive view of the right of privacy at issue here was reaffirmed in *Robbins* v. *Superior Court* (1985) 38 Cal.3d 199 [211 Cal.Rptr. 398, 695 P.2d 695], in which the Supreme Court declared invalid county welfare regulations which required single, eligible recipients to live in county housing facilities. The court stated, after citing to *Adamson,* "Plaintiffs argue persuasively that the county's 'in-kind' benefits policy infringes on their constitutional right to privacy. Residence at the Bannon Street facility compels the individual to give up his home and the ability to choose his associates. He is forced to live in a particular location without the freedom to choose his own living companions." (*Id.*, at p. 213.) Consequently, it is beyond refutation that the basis of decision in *Adamson* was not the *discrimination* between family and non-family effected by the ordinance, but the violation of the right to choose with whom one lives, a component of the "right of privacy" guaranteed by the California Constitution.

## B. *Is This Covenant Violative of the Simons' Right of Privacy?*

██ The covenant, by limiting the number of occupants of the Simons' house to three, prevented the Simons from providing a place to live to any more than one of their two children at a time for longer than sixty days per year. Should economic or medical necessity force the second child to seek to live with his/her parents for longer than 60 days, the Simons would have to bar the door to the child. Thus, both the more general right to choose with whom they live, and the right to live as a family, are directly impinged upon by this restriction.

The interests advanced to justify this restriction are well summarized by plaintiff's brief, which states: ". . . the director of the Redlands City Planning Department [*sic*] testified that *special allowances* were made for this housing project in light of its designation of three (3) or fewer occupants, including smaller lot size, fewer parking spaces etc., and that the particular area will become a slum if not upheld." These interests can be reduced to one: the restriction is obviously designed to control population density within Park Redlands.

Conceding, arguendo, that the interest advanced is compelling, the limitation is yet unenforceable against defendants here because it is not the least restrictive means of achieving this goal. In *Adamson,* as well as in this district's decision in *City of Chula Vista* v. *Pagard* (1981) 115 Cal.App.3d 785 [171 Cal.Rptr. 738], it was made plain, to be upheld, that any restriction curtailing the right of privacy, the aim of which is to regulate population density, *must* do so by reference to floor space and facilities. The court in *Pagard* stated: "Such appropriately drawn ordinance may and should address the population density problem directly by tying maximum permissible occupancy in a dwelling to objective standards such as across-the-board minimum floor space per person requirement, person per quantum of open space, persons per a bedroom or bathroom, or any other generally accepted standard which defines 'overcrowding.'" (*Id.,* at p. 797.)

In this case, the restriction at issue is an amorphous restriction with absolutely *no reference at all to physical facilities.* As applied, it restricts to 3 the number of occupants who live in both 900- to 1,000-square-foot houses, and 2,000-square-foot houses, the latter being the size which the Simons own and live in. The restriction operates to abridge the constitutionally guaranteed right of privacy in a completely capricious fashion, at least as to the 2,000-square-foot units.

C. *Can the Simons' Right of Privacy Be Violated By a Private Restrictive Covenant?*

■ *Adamson* and its progeny have all involved governmental restrictions, such as zoning ordinances, except one case. Speaking of the right to privacy generally, however, there is both Supreme Court and appellate authority to the effect that state action is not required to create a violation of the California Constitutional right of privacy. (*White* v. *Davis* (1975) 13 Cal.3d 757, 773-776 [120 Cal.Rptr. 94, 533 P.2d 222]; *Laguna Publishing Co.* v. *Golden Rain Foundation* (1982) 131 Cal.App.3d 816 [182 Cal.Rptr. 813], conc. opn. by Kaufman, J., p. 859; *Kinsey* v. *Macur* (1980) 107 Cal.App.3d 265, 272 [165 Cal.Rptr. 608]; *Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 829 [134 Cal.Rptr. 839].)

We do not need to go so far, however, because there is abundant state action present in the case here. The one offspring of *Adamson* which did not involve a governmental restriction was *Welsch* v. *Goswick* (1982) 130 Cal.App.3d 398 [181 Cal.Rptr. 703]. In *Welsch,* the appellate court reversed the trial court determination that a private covenant restricting property to single-family residential use was violated by the defendants' use of their home as a private care facility for six elderly ladies. The appellate court reversed this determination on the ground that ". . . recent changes in the social fabric convince us that the operation of a residential care facility for six or fewer residents is not inconsistent with a single-family residential purpose restriction." (*Id.,* at p. 408.) The Goswicks, who operated the home, had also challenged the covenant on the ground that ". . . enforcement of the restrictive covenant to prohibit their providing residential care and shelter to six unrelated elderly persons unconstitutionally infringes on their right to privacy." (*Id.,* at p. 401.) The majority explicitly refrained from deciding this case on that basis (*ibid.*), but Justice Staniforth, writing in concurrence, was not so timid.

Justice Staniforth's concurrence based his vote for reversal solely on the invasion of the Goswicks' right to privacy worked by the covenant (*id.,* conc. opn., p. 409). He concluded *Adamson* limits governmental entities only; private restrictive covenants were not expressly limited. He found state action, however, under *Shelley* v. *Kraemer* (1948) 334 U.S. 1 [92 L.Ed. 1161, 68 S.Ct. 836, 3 A.L.R.2d 441], and stated, "I conclude the trial court's enforcement of the covenant and preventing the Goswicks' present use is unconstitutional under *Adamson* [citation], because it lends the affirmative aid of the courts, through an eviction order, to furthering an unconstitutional invasion of the Goswicks' privacy." (*Id.,* conc. opn., at p. 412.) Lest Justice Staniforth's concurrence be dismissed as the calling

out of one small voice in the wilderness, it should be noted that the Supreme Court in *Robbins* cited Justice Staniforth's entire concurrence in support of its statement of the right of privacy as encompassing the right to choose those with whom one lives. (*Robbins* v. *Superior Court, supra,* 38 Cal.3d 199, 213.)

Justice Staniforth based his determination of the presence of state action on judicial enforcement of the covenant; that is present in the case here. The trial court ordered enforcement of the covenant against defendants and ordered persons whose presence violated the covenant "to quit."

However, there is a far more compelling basis for holding that state action is present here. State action is present where an executive officer aids or encourages the violation of rights. (*Lombard* v. *Louisiana* (1963) 373 U.S. 267 [10 L.Ed.2d 338, 83 S.Ct. 1122]; Nowak, Rotunda, Young, Constitutional Law (2d ed.) ch. 14, § 3, p. 509.) In the case here, testimony was given at trial, by the same director of the city planning agency, that the city had entered into an agreement with the developer of Park Redlands, in substance, that in return for a special use permit for building 900- to 1,000-square-foot homes on 5,500-square-foot lots, smaller than the minimum imposed by ordinance, the developer would impose the minimum age and number limitations in the recorded restrictions on the land. The development was conveyed, and a different entrepreneur actually built the houses. This latter owner tried to remove the age and number restrictions, but the City of Redlands, by bringing to bear some unknown leverage, forced him to rerecord the restrictions, along with a new restriction, which read in part: "Paragraph 3 [listing age and number restrictions], which has heretofore been amended, is further amended by adding the following:

"'Prior to recordation, any amendment proposed under the provisions of this section shall first be submitted for approval by the City of Redlands. No amendment shall be effective unless and until approval by the City of Redlands has been obtained.'"

This court will not, ostrich-like, ignore the heavy-handed role played by the City of Redlands in (1) creating, and (2) continuing the existence of this "purely private" restriction. Neither the city nor the residents of the development can take refuge in the private party status of the developer of Park Redlands to accomplish circumvention of these basic California constitutional guarantees to which the Simons are entitled.

## III

### DUE PROCESS AND VALIDITY CHALLENGES TO PARAGRAPHS 18, 19, 21, AND 23.

■ Defendants' challenges to the trial court's decree which hold paragraphs 18, 19 and 21 to be valid is without merit, and we shall affirm that part of the judgment. (*Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820].) ■ Otherwise, we shall affirm the trial court's decree upholding paragraph 23 as a valid running covenant.

### DISPOSITION

That portion of the judgment purporting to enforce the age and occupancy covenants in the Park Redlands Declaration of Restrictions against defendants is reversed. That portion of the judgment declaring by implication the enforceability of paragraphs 18, 19, 21 and 23 of those restrictions is affirmed.

Each side shall bear its own costs on appeal.

Rickles, Acting P. J., and Kaufman, J., concurred.

KAUFMAN, J.—Because I am persuaded there was clearly state action here, I have concurred in the opinion prepared for the court by Justice McDaniel, but I concur separately also to say I think it is disgraceful the law permits a person to buy property with full knowledge of restrictions on its use and with full knowledge that others have purchased their homes relying on such restrictions and yet permits the purchaser to later repudiate and ignore such restrictions with impunity.

As to the City of Redlands, the lesson is clear. It must never again reduce its standards on account of the special configuration of a development or recorded restrictions on use pertaining to the number or ages of the prospective occupants.

Finally, while I am bound by the decisions of the California Supreme Court prohibiting age discrimination in housing, I find those decisions legally and practically inane. They invoke First Amendment guarantees, freedom of association, to strike down age limitations, failing to recognize that in so doing they infringe to the same extent the same constitutional right, the freedom of association, of the other owners, not to mention their reasonable expectations, property rights and their right freely to enter into binding

contracts. The rights overlooked are at least as significant and as sacrosanct as the rights of those for whom our high court in its paternalistic wisdom is so solicitous.