[No. A052022. First Dist., Div. Five. Mar. 19, 1992.]

PALMER HOTZ et al., Plaintiffs and Appellants, v.
JAMES E. RICH, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is published with the exceptions of parts II and III.

COUNSEL

Glenn A. Forbes for Plaintiffs and Appellants.

Charles K. Epps for Defendant and Respondent.

Booth, Freret & Imlay and Christopher D. Imlay as Amici Curiae on behalf of Defendant and Respondent.

OPINION

ROUSE, J.*—Defendant James E. Rich, a homeowner in Foster City, received a use permit allowing him to construct an aerial for amateur radio transmission and reception. Plaintiffs, who are other Foster City residents and an unincorporated association of residents, brought this action to enjoin construction of the aerial, claiming it violated a covenant in Rich's deed. After a court trial the court found for defendant on the ground that enforcement of the deed restriction was preempted by a declaratory ruling from the Federal Communications Commission (FCC). We hold that the FCC ruling does not preempt judicial enforcement of private restrictive covenants. We reverse and remand for further proceedings.

Defendant is licensed by the FCC as an amateur radio operator. He has received local government approval for an antenna 46 feet high, approximately 36 feet higher than the eaves of his house. The tract containing defendant's and plaintiffs' lots is subject to a covenant first recorded in 1964, which provides: "*Aerials*: No radio or television or other aerial, antenna, tower or transmitting or receiving aerial, antenna, tower or support thereof shall be erected, installed, placed or maintained upon any lot or upon any building or structure, except those devices which may be erected, installed, placed or maintained and used under eaves or entirely within the enclosed portion of the individual dwelling unit or garage; and in no event shall such devices protrude above the highest point of the dwelling situated upon such lot." The declaration of covenants also provides they may be enforced by an action in law or equity by the owner of any lot. It was stipulated that the covenants and restrictions were appurtenant to and have run with each lot in the tract, and that plaintiffs and defendant took their property with constructive notice of the covenants and restrictions.

I

FCC regulations limit amateur radio antennas to a height of 200 feet, absent special approval; special restrictions apply to stations near airports.

*Retired Associate Justice of the Court of Appeal, First District, sitting under assignment by the Chairperson of the Judicial Council.

(47 C.F.R. § 97.15(a), (b).) The same regulation also provides: "(e) Except as otherwise provided herein, a station antenna structure may be erected at heights and dimensions sufficient to accommodate amateur service communications. [State and local regulation of a station antenna structure must not preclude amateur service communications. Rather, it must reasonably accommodate such communications and must constitute the minimum practicable regulation to accomplish the state or local authority's legitimate purpose]. [See PRB-1, 101 FCC 2d 952 (1985) for details.]"

The declaratory ruling referred to in the regulation, which we will refer to as "PRB-1," was issued in 1985 and is entitled, "In the Matter of Federal preemption of state and local regulations pertaining to amateur radio facilities" (101 F.C.C.2d 952 (1985) [50 Fed.Reg. 38,813 (Sept. 25, 1985)]). In PRB-1 the FCC sought to "stike [sic] a balance between the federal interest in promoting amateur operations and the legitimate interests of local governments in regulating local zoning matters." (PRB-1, 101 F.C.C.2d at p. 959.) The agency found that state and local laws "that operate to preclude amateur communications in their communities are in direct conflict with federal objectives and must be preempted." (Id., at p. 960.) The FCC declined to set a minimum antenna height below which local governments could not regulate, or to specify language for variance or use permit procedures. (Ibid.) Instead, the agency announced the "reasonable accommodation" and "minimum practicable regulation" standards which were then incorporated in the regulation quoted above.

The trial court concluded that PRB-1 established a requirement that state and local governments provide a reasonable accommodation to licensed amateur operators. Enforcement of the restriction on defendant's property, the court stated, would constitute "state action" under the rationale of Shelley v. Kraemer (1948) 334 U.S. 1 [92 L.Ed. 1161, 68 S.Ct. 836, 3 A.L.R.2d 441], and such state action would conflict with the federal interest established by PRB-1.[1] Defendant makes the same contention on appeal.

In order to resolve the preemption question, we need not decide whether enforcement of the restriction would be state action under Shelley or any other theory. The crucial issue is not state action, but the intended scope of preemption under the FCC's ruling. (See Pilot Life Ins. Co. v. Dedeaux (1987) 481 U.S. 41, 45 [95 L.Ed.2d 39, 46, 107 S.Ct. 1549] [congressional intent is touchstone of preemption].) In PRB-1 the FCC disavowed, in clear and unambiguous terms, any intent to preclude private arrangements restricting antenna height.

---

[1]It was stipulated that if PRB-1 did preempt enforcement of the covenant, the restriction imposed by the covenant would not be considered a reasonable accommodation for amateur radio.

Noting that amateur operators had complained of burdensome restrictions in deeds and apartment leases, the agency remarked that "[s]ince these restrictive covenants are contractual agreements between private parties, they are not generally a matter of concern to the Commission." (PRB-1, 101 F.C.C.2d at p. 954.) The agency also noted the views of homeowners and condominium associations, that "[p]urchasers or lessees are free to choose whether they wish to reside where such restrictions on amateur antennas are in effect or settle elsewhere." (*Id.*, at p. 955) Finally, as a footnote to the paragraph in which it announced its preemption ruling, the FCC stated, "We reiterate that our ruling herein does not reach restrictive covenants in private contractual agreements. Such agreements are voluntarily entered into by the buyer or tenant when the agreement is executed and do not usually concern this Commission." (*Id.*, at p. 960.)

■ An agency's statement of intent *not* to preempt "is dispositive on the question of implicit intent to pre-empt unless either the agency's position is inconsistent with clearly expressed congressional intent [citation omitted], or subsequent developments reveal a change in that position." (*Hillsborough County* v. *Automated Medical Labs.* (1985) 471 U.S. 707, 714-715 [85 L.Ed.2d 714, 722, 105 S.Ct. 2371].) ■ Defendant offers nothing to support either of the possible exceptions. Congress has given the FCC wide authority over radio operations (see 47 U.S.C. § 303), and defendant points to no statute in which Congress has forbidden voluntary arrangements restricting radio communication equipment. Nor does anything in the record suggest that the FCC has altered its position on preemption of restrictive covenants since PRB-1 was released in 1985.

Defendant argues the FCC refrained from reaching restrictive covenants because it regarded them as strictly private actions which *could* not be regulated. But under California law, he argues, judicial enforcement of a private restrictive covenant constitutes state action (citing *Park Redlands Covenant Control Committee* v. *Simon* (1986) 181 Cal.App.3d 87 [226 Cal.Rptr. 199]). Defendant further contends that PRB-1 should be interpreted as preempting any state action which does not reasonably accommodate amateur radio operations.

This interpretation of PRB-1 is implausible for several reasons. First, it assumes the agency was ignorant of *Shelley*, which established that judicial enforcement of restrictive covenants may constitute state action. Second, it posits a division between state and federal law on the question of state action, a division which does not exist. The passage from *Park Redlands* (*supra*, 181 Cal.App.3d at pp. 98-99) upon which defendant appears to be relying, is a discussion of Justice Staniforth's concurrence in *Welsch* v.

*Goswick* (1982) 130 Cal.App.3d 398 [181 Cal.Rptr. 703]; that concurring opinion, in turn, rests squarely on *Shelley* (*Welsch, supra,* at pp. 410-412). Third, defendant's argument rests on the premise that the FCC believed it did not have authority over restrictive covenants because they were private arrangements. ██ ██ The trial court reasoned, and defendant repeats, that the supremacy clause of the federal Constitution limited the agency to regulating government action. This premise, of course, is erroneous. The agency has the authority, subject to constitutional limitations unrelated to the supremacy clause, and within the scope of its congressional authorization, to regulate private conduct, although such regulation would not be called "preemption." If the agency thought it desirable to make rules regarding restrictive covenants which impinge on radio communications, it would not be prevented from doing so by the supremacy clause.

Finally, and most importantly, defendant's interpretation fails because it is inconsistent with PRB-1 itself. In that ruling the agency excluded covenants from its preemptive scope, not because it believed it lacked authority over them, but because, as voluntary contractual arrangements, they were not of "concern" to the agency. "Such agreements are voluntarily entered into by the buyer or tenant when the agreement is executed and do not usually concern this Commission." (PRB-1, 101 F.C.C.2d at p. 960, fn. 6.) Rather than regarding itself as unable to regulate, the language of PRB-1 demonstrates the agency deliberated on the question and decided to refrain from regulating.

██ Apparently, the agency concluded that the threat posed to amateur radio operations by restrictive covenants and leases did not require federal action because operators could choose not to buy or lease properties subject to such restrictions. Local government action, in contrast, is not in the control of the individual radio operator; even if he or she initially chooses to live in a community without local laws restricting aerials, such restrictions could be enacted later. The FCC saw the need for federal preemption to protect the national interest in amateur radio as greater in the case of zoning and other land use laws than in the case of restrictive covenants. Important as amateur radio communications are, freedom of contract and the reasonable expectations of other property owners are also important interests. (See *Park Redlands Covenant Control Committee* v. *Simon, supra,* 181 Cal.App.3d at pp. 100-101 (conc. opn. of Kaufman, J.).) The emphasis in PRB-1 on the voluntary nature of deed and lease restrictions suggests the agency considered those latter interests in refraining from regulating such restrictions.

Defendant stresses the strong federal interest in maintaining effective amateur radio service. Amicus American Radio Relay League, Inc., has

provided this court a detailed account of the importance of long-range amateur radio operators in providing an emergency communications network, advancing the radio art, and furthering international exchange of ideas and information.[2] However, the federal interest was explicitly recognized by the FCC in PRB-1. The agency also recognized various local interests in the subject matter, and attempted to "st[r]ike a balance." Where Congress, or in this case a federal agency acting pursuant to congressional delegation, has weighed the federal and local interests and reached an explicit balance, judicial deference is called for. ■ "[I]t is for Congress to rethink the division of regulatory authority in light of its possible exercise by the States to undercut a federal objective. The courts should not assume the role which our system assigns to Congress." (*Pacific Gas & Elec.* v. *Energy Resources Comm'n* (1983) 461 U.S. 190, 223 [75 L.Ed.2d 752, 777, 103 S.Ct. 1713], fn. omitted.)

■ Defendant also argues the PRB-1 statement of nonpreemption is not applicable here because his agreement to the restrictive covenant was not voluntary. The trial court found that similarly restrictive covenants apply to the entire residential area of Foster City; thus, defendant argues, he had no choice but to accept the restriction if he wished to live in Foster City. Despite the pervasiveness of these restrictions in Foster City, defendant's acceptance of them was still voluntary in that it resulted from his voluntary purchase of a house in the covered area. He had constructive notice of the restrictions applicable to his property, and by his purchase he received a property right which cannot be involuntarily altered by private action. In this respect, deed restrictions are unlike zoning laws and other local government regulation of land, to which property owners are subject whether they personally agreed to them or not. That similar restrictions cover much of Foster City does not tend to show that the FCC intended their enforcement be preempted by federal law.

The trial court erred in concluding that federal regulations preempted judicial enforcement of the deed restriction.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[2]As plaintiffs point out, this material goes beyond the record on appeal. Plaintiffs, however, concede the federal importance of amateur radio, and argue only that the FCC has considered that policy and decided not to assert that interest by preempting enforcement of private covenants.

*See footnote, *ante*, page 1048.

## IV

■ We have concluded that the restrictions on antenna height and placement are not made unenforceable by federal regulations, or on other grounds discussed in the unpublished portion of this opinion; therefore it is necessary to reverse the judgment and remand for further proceedings. Reversal, however, does not imply that the trial court must necessarily enforce the restrictions in full. Plaintiffs are seeking enforcement of the restrictions in equity, and the trial court has the equitable power to refuse enforcement if it finds the restriction so unreasonable as to violate public policy. ■ "Promises restricting the use of land are unreasonable and, therefore, illegal when the harm caused by the restriction is so disproportionate to the benefit produced by the performance of the promise that the promise ought not to be enforced. Such a test is necessarily vague. Its application requires the resolution of a conflict between opposing policies. One of these is that men should be required to live up to their promises; the other that land should be developed to its normal capacity. Among the factors to be considered in making a proper compromise between these policies are (1) the net effect of the transaction of which the promise is a part in promoting or limiting the use of land in the locality in which the particular land restricted by the promise is situated . . . ." (Rest., Property, § 539, com. f; see also 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 494(2), p. 672; *Taormina Theosophical Community, Inc.* v. *Silver* (1983) 140 Cal.App.3d 964, 973 [190 Cal.Rptr. 38] [unreasonable restraint on alienation].)

■ In exercising its equitable judgment the trial court may consider the public interest in maintaining amateur radio operations. Although the subject is generally one for federal regulation, California also has an interest in the creation and preservation of a network of operators who may assist in emergency communications. As suggested by the quoted Restatement passage, the court may also consider the extent to which similar restrictions may result in an effective ban on amateur radio operations throughout Foster City, and the potential impact of that ban on communications throughout the state. A further factor may be the extent, if any, to which such restrictions affect the salability or value of the subject land. On the other side of the balance the court should consider the benefits of these restrictions to neighboring properties and the community as a whole, including any aesthetic and safety benefits. Also to be weighed are the reasonable expectations of other property owners, and any effect on the value or salability of their property which could ensue from a failure to enforce the restrictions. The question to be answered is whether the public and private harm which would be caused by full enforcement of the restriction so outweighs the benefits of enforcement as to make strict enforcement in equity unjust.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion. Each party to bear their own costs on appeal.

King, Acting P. J., and Haning, J., concurred.