Filed 8/1/25  Larson v. Hsu CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KIRBY LARSON et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CLARK HSU,<br><br>Defendant and Respondent. | B331378<br><br>(Los Angeles County Super. Ct. No. 22TRCV00079) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald F. Frank, Judge.  Reversed and remanded.

Newmeyer & Dillion, Benjamin P. Pugh, and Gabriella N. Stevens for Plaintiffs and Appellants.

Cox, Castle & Nicholson, Robert R. Begland, Jr., Stanley W. Lamport, and Scott R. Laes for Defendant and Respondent.

Plaintiffs and appellants Kirby Larson (Kirby) and Sarah Susan Larson (Sarah) (collectively, plaintiffs) allege landscaping maintained by their neighbor, defendant and respondent Clark Hsu (defendant), violates the Palos Verdes Homes Association's (the Association's) covenants, conditions, and restrictions (CC&Rs).  The trial court granted defendant's motion for summary adjudication of plaintiffs' causes of action for nuisance and breach of contract based on its finding that plaintiffs have no right to an ocean view (and plaintiffs thereafter voluntarily dismissed their only other remaining cause of action).  In this appeal from the subsequently entered judgment, we consider whether there is a triable issue of material fact as to whether defendant's deviation from approved landscaping plans constitutes a violation of the CC&Rs independent of any asserted right to an ocean view.

## I.  BACKGROUND

### A.  *Plaintiffs' Home and the Hedge That Triggers This Litigation*

Plaintiffs bought a single-story home in Palos Verdes Estates in 2002.  Defendant's home is situated between plaintiffs' home and bluffs overlooking the ocean.  An alley runs between the two properties.  Plaintiffs and defendant are members of the Association, and they are governed by the Association's CC&Rs.

In or around "the early 2010s," defendant rebuilt his home and added a second story.  As part of this process, defendant prepared a fuel modification plan with a diagram depicting new landscaping.  The plan shows a prunus caroliniana hedge along the side of defendant's yard bordering the alley.  The diagram shows an eight-to-ten-foot tall hedge, but the schematic's legend

2

states the hedge is to be kept to a maximum height of six feet.[1] The plan was approved by the Los Angeles County Fire Department (the Fire Department), the City of Palos Verdes Estate's Planning Department, and the Association's "Art Jury." The Art Jury's approval includes the condition that "[a]ny deviation from approved plan must have approval of art jury prior to execution."

Instead of planting the prunus caroliniana specified in the approved plan, defendant planted a ficus microcarpa hedge along the boundary between his and plaintiffs' homes. The ficus grows faster and taller than the prunus, and it requires more frequent pruning to maintain a desired height. Defendant never sought Art Jury approval to plant a ficus hedge in lieu of a prunus hedge, or to allow the hedge to grow above six feet.

Plaintiffs rebuilt their home to add a second story in or around 2018, after defendant planted the ficus hedge. For the first couple years following their rebuild, plaintiffs enjoyed an ocean view from their second floor that they did not have before the renovation.[2] By early 2020, however, the ficus hedge had grown to a height between 10 and 20 feet and blocked plaintiffs' view of the ocean.

---

[1]     None of the several copies of the plan included in the appellate record is fully legible. Our discussion of the plan's height restrictions is accordingly based partly on defendant's deposition testimony.

[2]     Plaintiffs admitted this in response to defendant's special interrogatories, but Kirby offered contradictory testimony after defendant moved for summary judgment.

*B.     Pertinent Provisions of the CC&Rs*

The CC&R provisions that are important in this appeal are a "summary" section at the beginning of the document, subsequent sections addressing enforcement and landscaping, and an interpretive resolution by the Association.  We will describe each.

*1.     The summary*

Two portions of the summary are relevant to this appeal. First, the summary states "[t]he restrictions have been most carefully worked out for every part of Palos Verdes Estates, to accomplish" several enumerated "results," including preserving "the fine views of ocean, mountains, and park."  Second, the summary states that "[f]ences, walls, hedges and poles will be limited to a reasonable height."

*2.     Approval requirements and remedying violations*

Article III, Section 2 of the CC&Rs provides, in pertinent part, "[n]o building, fence, wall, sidewalk, steps, awning, tent, pole or other structure, improvement, utility, parking, sculpture, or planting shall be erected, constructed, altered or maintained upon, under or above any portion . . . of any property at any time within the jurisdiction of the Art Jury or of Palos Verdes Homes Association . . . unless plans and specifications therefor, including the exterior color scheme, together with a block plan indicating location, shall have been submitted to, [sic] approved in writing by the Art Jury and a copy of such plans, specifications, and block plans as finally approved deposited for permanent record with

4

the Art Jury. . . ."  (We shall hereinafter refer to Article III, Section 2 as "the Art Jury provision.")

Article V, Section 7 provides "representatives of [the Association] and/or of the Art Jury shall have the right at any time to enter on or upon any property for the purpose of cutting back trees or other plantings which may grow up to a greater height than in the opinion of [the Association] is warranted to maintain the view and protect adjoining property."

Article VI, Section 8 provides that any violation of the CC&Rs "is declared to be and shall constitute a nuisance, and may be abated by . . . [the Association] and/or by any lot owner subject to the jurisdiction of [the Association] . . . ."

Article VI, Section 12 provides the CC&Rs "bind and inure to the benefit of and [are] enforceable by . . . [the Association], by the owner or owners of any property in said tract, their and each of their legal representatives, heirs, successors and assigns and failure by . . . [the Association] or any property owner . . . to enforce any of such restrictions, conditions, covenants, restrictions, liens or charges shall in no event be deemed a waiver of the right to do so thereafter."

### 3. *Interpretive resolution*

The CC&Rs expressly authorize the Association to interpret the provisions therein.  In April 2021, pursuant to this authorization, the Association adopted Resolution No. 191 setting forth its interpretation of Article V, Section 7's view protection provision.

In the resolution's preamble, the Association stated its purpose was "to implement guidelines and adopt written procedures to promote the voluntary resolution of view

5

impairment disputes and for use in the evaluation and resolution of view impairment disputes arising from the restrictions set forth in Article V, Section 7 of the [CC&Rs] so members may better understand the procedures and remedies available and have a clear process to manage and correct view impairments." The body of the resolution provides that for properties (like plaintiffs') purchased "prior to the date of the enactment of [Resolution No. 191], 'view' means the view that existed on the latest date the Restrictions were filed, or June, 26, 1923." Resolution No. 191 also sets forth criteria to be "considered in determining whether a [s]ignificant [v]iew [o]bstruction has occurred," including "[t]he extent to which the foliage obstructs a Scenic View from a Main Viewing Area." A "[s]cenic [v]iew" is defined as "a view of the community and its special features," including the ocean and coastline, and a home's "[m]ain [v]iewing [a]rea" is "the primary living area of the primary residential structure."

C.    *Plaintiffs' Lawsuit*

Plaintiffs brought this action against defendant, defendant's wife, and two other neighbors in February 2022. (Plaintiffs later dismissed their claims against defendant's wife and the other neighbors.) Plaintiffs' complaint asserts a cause of action claiming defendant's hedge is a nuisance because the hedge violates the CC&Rs and "Fire Department restrictions." The complaint also asserts two breach of contract causes of action alleging defendant breached the CC&Rs by violating the "summary" provision discussed *ante*, by "maintaining and planting foliage that result[s] in a 'Significant View Obstruction'" in violation of Resolution No. 191, and by "maintaining and

6

altering planting" without the Association's approval and "in violation of the specifications provided in the plans approved by the Association."[3]

Plaintiffs sought injunctive relief, damages, and attorney fees.

### D. Summary Adjudication

Defendant moved for summary judgment or, in the alternative, summary adjudication. As to the contract claims, defendant argued the summary provision in the CC&Rs is merely a non-binding recital. Defendant argued Resolution No. 191 determines the scope of any view rights under the CC&Rs and further contended that because plaintiffs admitted in interrogatory responses they had no ocean view from the ground floor of their home "at any time" and there was no ocean view from the second floor in 1923 (the second floor did not exist at that time) they have no protected ocean view under Resolution No. 191. As to the nuisance cause of action, defendant argued there is no general right to a view. Defendant argued plaintiffs' alternative theory that the ficus hedge violates local ordinances fails because the Fire Department found otherwise and, in any case, plaintiffs lack standing to enforce such ordinances.

In opposition, plaintiffs argued "[t]he narrowest grounds to deny summary judgment is that [defendant] failed to obtain Association approval for two twenty-foot-high [f]icus hedges." Alternatively, plaintiffs maintained the summary provision of the

---

[3]     Plaintiffs' fourth cause of action that they later voluntarily dismissed was a claim for breach of oral contract based on defendant's alleged promises not to block their view of the ocean.

CC&Rs is binding and the reasonableness of defendant's conduct in connection with that provision should be decided by a jury. Plaintiffs disputed defendant's argument that they had no protected ocean view under Resolution No. 191 because, according to Kirby's declaration filed in support of their opposition to the motion for summary judgment, "[i]n 1923, there were no homes or trees to obstruct the potential view from the second floor of [plaintiffs'] home . . . ." Plaintiffs further argued, for the first time, that the ficus hedge constitutes a "spite fence" and there are triable issues of fact as to defendant's intent for purposes of this theory.

In reply, defendant asserted Kirby's declaration concerning the view from plaintiffs' property in 1923, which contradicted plaintiffs' responses to interrogatories, was a sham and lacked foundation. Defendant also reiterated his argument that plaintiffs have no view rights under Resolution No. 191 and pressed the argument further to claim parties "[cannot] enforce CC&R violations in state court" except as provided in Resolution No. 191.

Prior to the summary adjudication hearing, the trial court issued a tentative ruling in defendant's favor. The court tentatively concluded plaintiffs "failed to raise a triable issue that they or their successor [sic] in title had any residential structure or any view rights in 1923" and, "[a]ccordingly, as a matter of law, [p]laintiff[s] have no contractual or statutory basis for any view rights under the CC&Rs or under Resolution [No.] 191." The tentative ruling did not discuss the Art Jury provision, implicitly accepting defendant's position that Article V, Section 7 and Resolution No. 191 are alone dispositive in any dispute relating to views.

8

At the summary adjudication hearing, plaintiffs' counsel argued "this is not exclusively a view case" and highlighted portions of the complaint relying on defendant's violation of the Art Jury provision. In response, the trial court asked whether the "harm [is not] the obstruction of [plaintiffs'] view." Plaintiffs' counsel responded that this was not the only harm and argued plaintiffs "are entitled to have the hedge as approved of six feet so they can see the space between the houses." Put in different terms, plaintiffs' counsel argued "the damage is not what they can't see. The damage is what they see sitting on their patio looking at this . . . wall of vegetation. And so I don't think to reach a jury they have to prove a loss of ocean." Plaintiffs' counsel also argued "the CC&R[ ]s provide that owners have standing to assert violations of the CC&R[ ]s and it's not limited to the matters set forth in Resolution [No.] 191."

Unconvinced that plaintiffs could articulate an injury arising from a violation of the CC&Rs independent of their alleged view rights, the trial court stated its "tentative with respect to the controlling nature of Resolution [No.] 191 with respect to a view obstruction [would] stand[ ]." The trial court invited supplemental briefing, however, solely on the question of whether plaintiffs should be permitted to amend the complaint to assert a cause of action for private nuisance based on their argument that the ficus hedge constitutes a spite fence. After the parties filed their supplemental briefs, the trial court granted defendant's motion for summary adjudication of each cause of action in the original complaint and granted plaintiffs leave to file a first amended complaint with "a separately labeled cause of action for nuisance based on the so-called Spite Fence law . . . ."

9

Plaintiffs thereafter filed a first amended complaint, but they immediately requested the new spite fence cause of action be dismissed without prejudice.  The trial court so ruled and later entered judgment for defendant, including an award of attorney fees and costs.

## II.  DISCUSSION

There is a triable issue of material fact as to whether defendant's ficus hedge violates the Art Jury provision of the CC&Rs, and that is all we need to decide to resolve this appeal (Code Civ. Proc., § 437c, subd. (f)(1); *Rojas-Cifuentes v. Superior Court of San Joaquin County* (2020) 58 Cal.App.5th 1051, 1061 ["summary adjudication . . . is typically only appropriate when it disposes of an entire cause of action"]).[4]  As we proceed to explain, Article V, Section 7 and Resolution No. 191's direct, but limited, protection of view rights does not insulate defendant from potential liability under the Art Jury provision; further trial court proceedings are necessary to decide liability on that ground.

Plaintiffs' contract and nuisance claims are partly predicated on defendant's alleged violation of the Art Jury provision.[5]  As we have already mentioned, this provision

---

[4]    Defendant's request for judicial notice of an amended fuel modification plan approved by the Fire Department (but not the Art Jury) after judgment is denied.  (*Center for Biological Diversity v. Department of Fish & Wildlife* (2017) 17 Cal.App.5th 1245, 1258, fn. 8.)

[5]    Defendant's contention in his respondent's brief that plaintiffs "admitted . . . this view dispute is governed by Resolution [No.] 191" mischaracterizes plaintiffs' discovery responses.  The relevant interrogatory responses state

10

prohibits members from "erect[ing]" or "maintain[ing]" a planting without the Art Jury's written approval. Here, the Art Jury's approval of defendant's plans indicating a six-foot prunus hedge along the border with plaintiffs' property expressly stated "[a]ny deviation from approved plan must have approval of art jury prior to execution." Article VI, Sections 8 and 12 provide for enforcement of the CC&Rs by individual members under contract and private nuisance theories.[6]

---

"Resolution [No.] 191 *and the CC&R[ ]s* control this dispute." (Emphasis added.)

[6]    The ability of homeowners to enforce CC&Rs provisions akin to Article VI, Section 12 is reflected in prior cases. (See, e.g., *Walker v. Haslett* (1919) 44 Cal.App. 394, 396, 401 [holding individual homeowner was entitled to injunction against neighboring home being used as duplex under covenants providing "that the original grantor, or any of its successors or assignees or any owner of any lot in the tract, may enjoin or abate, or remedy, by proper proceedings, the breach of any covenant"]; *Hotz v. Rich* (1992) 4 Cal.App.4th 1048, 1052 [reversing preemption finding against residents and unincorporated association of residents who brought action to enjoin construction of antenna exceeding height limit prescribed in covenants providing for "enforce[ment] by an action in law or equity by the owner of any lot"].) Plaintiffs cite Civil Code section 6856 as an additional basis for individual enforcement of the CC&Rs, but that statute only applies to common interest developments (Civ. Code, § 6582, subd. (a)) and there is no evidence in the record suggesting the Association is so organized.

The weight of published authority also indicates Article VI, Section 8's provision that every violation of the CC&Rs "shall constitute a nuisance, and may be abated by . . . [the Association] and/or by any lot owner" is effective to render every violation of the CC&Rs a nuisance. (See, e.g., *Woodbridge Escondido*

11

Defendant does not contend the ficus hedge conforms to the approved renovation plan he submitted or otherwise complies with the Art Jury provision. He argues, rather, that plaintiffs cannot enforce the Art Jury provision because Article V, Section 7 and Resolution No. 191 are the sole provisions under which a member may seek to protect a view. The fact that the Art Jury provision in this case may incidentally protect an ocean view, however, does not mean that its scope is restricted by Article V, Section 7 and Resolution No. 191. A judgment for plaintiffs based on defendant's alleged violation of the Art Jury provision would not recognize, implicitly or otherwise, their right to an ocean view. It would simply vindicate their right—shared with other members of the Association—to enforce the CC&Rs.

Article V, Section 7's grant of discretionary authority to the Association "at any time to enter on or upon any property for the purpose of cutting back trees or other plantings which may grow up to a greater height than in the opinion of [the Association] is warranted to maintain the view and protect adjoining property" does not nullify or limit the Art Jury provision. The two provisions serve distinct purposes. The Art Jury provision is a prophylactic measure to ensure landscaping plans are consistent with the Art Jury's aesthetic judgments. Article V, Section 7 is a remedial measure empowering the Association to restore views

_____

*Property Owners Assn. v. Nielsen* (2005) 130 Cal.App.4th 559, 570-571; *Cutujian v. Benedict Hills Estates Assn.* (1996) 41 Cal.App.4th 1379, 1389 [holding that the plaintiff "stated a timely and viable cause of action for a continuing nuisance" based on a violation of CC&Rs because, among other things, the CC&Rs "provide[d] that any violation of a duty created by the[m] . . . w[ould] give rise to an action for nuisance"].)

obstructed by plantings regardless of whether those plantings were part of an approved landscaping plan.[7]

Defendant also suggests plaintiffs suffered no cognizable injury as a result of his alleged breach of the Art Jury provision because they have no right to an ocean view. The issue for purposes of summary adjudication, however, is not whether plaintiffs have a right to an ocean view, but whether they have a right to enforce the CC&Rs. In other words, defendant's alleged breach of the Art Jury provision may have caused damages unrelated to the loss of an ocean view. (*Knox v. Streatfield* (1978) 79 Cal.App.3d 565, 574-575 [holding that the purpose of a community's CC&Rs was "to maintain a certain appearance" and that "a declaration of restrictions such as the one in this case gives rise to a cause of action for damages for the violation of the restriction"].) Even if not, plaintiffs are entitled to pursue injunctive relief even without evidence of damages. (*Id.* at 573 ["'[w]here equitable relief is sought, proof of actual or substantial injury is not essential, the establishment of a violation of a uniform building restriction being all that is necessary to entitle a complaining owner to relief'"]; accord *Morgan v. Veach* (1943) 59 Cal.App.2d 682, 691.)

---

[7]    Plaintiffs complaint prays for an injunction requiring defendant to trim foliage blocking their view of the ocean in their prayer for relief (in addition to "other and further relief as the Court deems just and proper") but this "prayer for relief is no part of the statement of fact, and the fact that too much is asked for does not affect the cause of action stated." (*Slovensky v. Friedman* (2006) 142 Cal.App.4th 1518, 1535.)

13

DISPOSITION

The judgment is reversed. The cause is remanded with directions to vacate the order granting summary adjudication of plaintiffs' causes of action for nuisance and breach of contract (as members of the Association and as third-party beneficiaries), and for further proceedings consistent with this opinion. The trial court may consider what, if any, limitations there should be on the presentation of evidence concerning claims that are not the basis for our reversal of the summary adjudication order. Plaintiffs are awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM (D.), J.