[Civ. No. 12091.   First Dist., Div. One.   June 18, 1942.]

R. H. STROSNIDER, Plaintiff and Respondent, v. ERNEST POMIN et al., Appellants; C. F. EDWARDS et al., Interveners and Respondents.

H. J. Kleefisch for Appellants.

Thomas Maul for Plaintiff and Respondent.

Richard Barry for Interveners and Respondents.

WARD, J.—This is an appeal by defendants from a judgment declaring the plaintiff and the interveners to be the owners of a right of way over certain lands belonging to defendants, which right of way it was decreed be constructed and forever maintained by the defendants, who were further directed to remove all obstructions therefrom.

The facts of the case are as follows: Frank and Marian Pomin, the predecessors of appellants, for many years conducted a resort on Lake Tahoe. In the year 1913, in connection with certain land they were conveying to respondents' predecessors, they granted the latter by separate agreement a forty foot right of way over lands retained by them, covenanting at the same time to make and maintain a private road thereon "as a way of passing over the lands of said first parties [Frank and Marian Pomin] to the shores of Lake Tahoe." By the same agreement they covenanted to deed to respondents' predecessors upon demand an additional small triangular parcel of land. In the years that followed, respondents' predecessors did little toward improving their property, and the road was not built. In fact from time to time Marian

and Frank Pomin erected buildings which encroached upon the right of way. In 1923, four years after the first of such improvements were made, the Pomins, pursuant to and in confirmation of the terms of the 1913 agreement deeded the triangular piece of land above mentioned, including in such deed the right of way in question "to be used in common by the parties hereto, and their heirs, executors and assigns." Upon the death of Frank Pomin in 1935, the resort property was distributed to his widow, subject to the above right of way. Marian Pomin died shortly thereafter, the appellants herein (brother and sisters of Frank Pomin) succeeding to the property pursuant to an agreement with other heirs. The decree of distribution in the matter of Mrs. Pomin's estate failed to make any reference to the right of way, although in the decree of distribution in the matter of the estate of one of her heirs to the property, the easement in question was provided for.

Following the death of Marian Pomin, plaintiff, who as the result of intermediate conveyances had acquired title to most of the property originally held by his predecessor parties to the 1913 agreement, brought suit against the executor of the estate of Marian Pomin to enforce the terms of such agreement and to quiet title to the property in question. Ernest Pomin, one of the appellant heirs, and in apparent charge of the property,—although it is claimed he had no authority from his sisters to act in this connection,—promised to open and improve the right of way if the suit were dismissed. He did remove the encroachments, graded the road and opened it. Shortly thereafter he and his sister, appellant Ida Pomin, by leave of court, filed a complaint in intervention in the above mentioned suit against the executor, copy thereof being served on plaintiff herein. About a month later, the plaintiff dismissed the action against the executor, and shortly thereafter the decree of distribution in the matter of the estate of Marian Pomin was made and filed. Thereafter Ernest Pomin erected a fence across the right of way, posted a "No Trespassing" sign, and refused to allow any of the respondents further use of the easement. Such action resulted in the present suit.

The action was brought to compel the appellants to specifically perform the terms of the 1913 agreement, confirmed by the deed of 1923, and the oral agreement of Ernest Pomin in 1937 to open and improve the right of way, and for damages. Owners of certain lots in a subdivision, "Tahoe Cedars," who had become beneficiaries in this easement of right of way, intervened.

The points urged by appellants relate to certain issues, upon which the court found against them and awarded nominal damages, namely, that the easement granted in 1913 was, in 1936, upon the death of Marian Pomin under whom they claim, extinguished by operation of law—by assent of owners of the servitude, by their acts, and by adverse possession and nonuser; that the relief sought is barred by the statute of frauds, by the statutes of limitation, laches and adverse occupancy. In brief, they contend here, as they did in the trial court, that the easement granted by agreement in 1913 and by deed in 1923 was extinguished by the building and maintenance by Frank and Marian Pomin of obstructions across the right of way, and that the oral agreement of plaintiff and Ernest Pomin in 1937 was invalid primarily because the latter had no written authority to make any contract affecting the property on behalf of the co-owners and because the agreement by plaintiff and Ernest Pomin was also not in writing. Certain objections are presented to the sufficiency of the pleadings and of the evidence to sustain the findings.

■ The main issue involved herein is whether the Pomins, by the erection and maintenance of buildings on the right of way, had extinguished the easement by adverse possession. Such buildings seem to have been constructed and maintained without discussion by the respective parties. In the early days, Tahoe Cedars was sparsely settled; there was no fixed roadway, and the residents of that tract walked over the Pomin property to the lake without regard to a right of way, and also without discussion of the matter by the parties.

Defendants cite subd. 3, sec. 811 of the Civil Code to the effect that a servitude is extinguished "By the performance of any act upon either tenement, by the owner of the servitude, or with his assent, which is incompatible with its nature or exercise," and argue that, having hoisted the flag of hostility over the right of way by the erection of buildings and a fence, the Pomins thereby performed an act incompatible with the exercise of the right of way and continued this hostile attitude until the easement was extinguished by operation of law. The easement was granted without limitation as to time or of use. The facts indicate the parties knew that for practical purposes a roadway would not be required until the Tahoe Cedars tract had been developed to such an extent that a road to the lake across the Pomin land would become necessary to conveniently serve the interests of those

using the tract. That the erection of the obstructions was permissive and not hostile is indicated by the 1923 deed, executed several years after the erection of buildings, in pursuance of the 1913 agreement. In the 1923 deed, the Pomins granted, bargained, sold and conveyed to the same grantees or their successors not only the parcel of land agreed in 1913 to be conveyed, but a right of way "as a way for the passage of pedestrians and vehicles over the above described land to the shores of Lake Tahoe from the lands adjacent to and abutting thereon." This would seem to indicate an acknowledgment by appellants' predecessors that they made no claim hostile to respondents' rights, and that respondents would be entitled to demand the road when they had need therefor. Since appellants' predecessors, by executing the confirmatory deed to the easement, acknowledged that the improvements erected prior thereto were not hostile to the rights of respondents, a reasonable inference may be drawn that neither did those later erected encroaching upon such easement constitute an adverse user. In *Storrow* v. *Green,* 39 Cal. App. 123 [178 Pac. 339], wherein the servient owner during a period of years erected a fence and tennis court, grew grass and planted trees on a right of way, it was held that he would be presumed to be in possession of the property by permission until by some word or act he gave notice of a change from peaceful to hostile possession, and that the mere fact that plaintiff in that case made no attempt to use the right of way indicated no acknowledgment of hostile possession in the defendant, and that defendant could not claim the land by adverse possession. (*Thomas* v. *England,* 71 Cal. 456 [12 Pac. 491].) Occupancy is presumed to be under the grant deed "until some unequivocal act gives notice of a changed attitude, and these are questions of fact for the trial court." (*San Juan G. Co.* v. *San Juan R. etc. Assn.,* 34 Cal. App. (2d) 159, 171 [93 P. (2d) 582]; *Hutton* v. *Ormando,* 3 Cal. (2d) 305 [43 P. (2d) 1100]; *Nelson* v. *Sweitzer,* 22 Cal. App. (2d) 382 [71 P. (2d) 85].)

In the present case there was a common ownership of easement between appellants' and respondents' predecessors in interest. Under such circumstances, ordinarily the rule is that, to establish title by adverse possession, there must be an ouster. In *Johns* v. *Scobie,* 12 Cal. (2d) 618, 623-624 [86 P. (2d) 820, 121 A. L. R. 1404], the court said: "It is a fundamental rule that each tenant in common has a right to occupy

the whole of the property. The possession of one is deemed the possession of all; each may assume that another in exclusive possession is possessing for all and not adversely to the others; and consequently one tenant in common does not, merely by exclusive possession, gain title by adverse possession against the others. Such possession will be presumed to be by permission and rightful, unless notice is brought home to the others that it has become hostile.'' Under the facts of this case there appears to be lacking a claim of exclusive ownership on the part of appellants' predecessors.

Having determined that Frank and Marian Pomin may not be classed as adverse claimants in possession, we come to appellants' next contention; that the present action is barred by the statute of limitations. This contention is disposed of by our conclusion that the possession of the Pomins was not adverse.

On the question of laches, no intention to abandon was ever indicated by respondents or their predecessors. In *Parker* v. *Swett,* 40 Cal. App. 68 [180 Pac. 351], where there had been a failure for twenty-five years to exercise a right to install a pipe line, the court said (p. 74) : ''. . . an easement founded upon a grant cannot be lost by mere nonuser, no matter how long that nonuser may continue.'' (*City of Vallejo* v. *Scally,* 192 Cal. 175 [219 Pac. 63].)

Prior to the death of Marian Pomin it does not appear that there was need to open the roadway as the development of Tahoe Cedars had not reached such a stage that use of the easement was necessary. That the rights of respondents thereto were recognized by appellants' predecessors up to the time of making the decree of distribution in the estate of Frank Pomin is demonstrated by the instrument which distributed the resort property to the widow Marian Pomin subject to the right of way.

The contention particularly emphasized on this appeal is that the easement was extinguished at the death of Marian Pomin, following which, as stated, Ernest Pomin and his sisters came into possession of the property.

Appellants argue that the agreement between Ernest Pomin and the plaintiff was barred by the statute of frauds in that an agreement to create an easement, to be enforceable, must be in writing, and that authorization by the sisters of Ernest Pomin to act as their agent in recognizing such easement must likewise be in writing. (Code Civ. Proc., § 1973; Civ.

Code, § 2309.) It is also contended that Ernest Pomin entered into the contract due to a mistake in law, in this, that at the time he believed respondents had a right to the easement; that because of this mistake of law he should be relieved therefrom. The latter contention depends upon the assumption that the easement was extinguished by adverse possession of the Pomins, an assumption which we have already determined to be unjustified.

The contract between plaintiff and Ernest Pomin was fully executed. The suit was dismissed and the road opened, the sisters paying their share of the expense of such opening as fixed by Ernest Pomin. In connection with the whole transaction it appears that Ernest Pomin was "looking after" the interests of the sisters and that whatever he did "was all right." The court found that Ernest Pomin "was acting for and on behalf of the other defendants [his sisters]" and "that said representations, agreements and promises of the said Ernest Pomin, one of the defendants, who was acting on behalf of the other defendants and with their knowledge and consent as well as on his own behalf, were made fraudulently and in bad faith and with the sole purpose of inducing and causing the plaintiff to dismiss the said suit." The evidence shows that in a letter dated November 4, 1937 addressed to plaintiff, Ernest Pomin promised to take out "stumps," etc., requested that the pending suit be dismissed and assured plaintiff "of my future cooperation with you and Tahoe Cedar lot owners for their use of the road." Within a month Ernest Pomin wrote plaintiff: "We have the stumps out and the rocks lined up on the county line. Your suit against the estate is the only thing that is holding up the final closing of the estate, and looks like the Pomins side of the estate is getting the blunt of the expense. I know if you would withdraw your suit would stop a lot of expenses for us. I know we can fix up any differences between us in regards to the right of way." After the dismissal of the action against the executor, Pomin placed a fence across the improved roadway. Relative to the matter, there is the following testimony by Ernest Pomin: "Q. And you knew that he dismissed the suit because you opened the road and thought you were going to keep it open, didn't you? A. That was the idea. Q. You figured that you had made him a promise that you would open the road and keep it open? A. To my knowledge, it has never been opened up. Q. You figured you had already

done that in the Fall of 1937? A. Yes, sir. Q. And you figured that he thought the road would be open from then? A. Yes, sir. Q. You don't think that he would have dismissed the suit if you had not kept it open, do you? A. I don't think he would. Q. That is what induced him to dismiss the suit, wasn't it? A. Yes, sir.''

The court found that Ernest Pomin acted ''fraudulently and in bad faith.'' We are unable to disturb such finding and do not feel it necessary further to discuss the supporting evidence. So far as his sisters are concerned, in order to enforce the easement no reliance need be placed on the oral agreement.

Finally appellants claim that plaintiff under the guise of an action to quiet title and obtain declaratory relief sought to compel specific performance under the agreement of 1913 and the deed of 1923 without having pleaded the necessary facts; and that the complaint in intervention did not state a cause of action.

On the first point the action was one to quiet title to an easement and to enjoin interference with its enjoyment; on the second it appears that matters of substance in one cause of action were alleged by reference. The objections raised by appellants are technical. The pleadings may not be models of perfection, but neither the court nor the litigants were misled as to the issues involved. After an examination of the entire record, we are not convinced that the technical errors complained of resulted in a miscarriage of justice. (Const. Cal., art. VI, sec. 4½.)

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing was denied July 18, 1942, and appellant's petition for a hearing by the Supreme Court was denied August 13, 1942.