No. 93-331

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

ROBERT SCHERPENSEEL and SHIRLEY
SCHERPENSEEL, husband and wife;
ROBERT EICKERT and THERESA EICKERT,
husband and wife,

        Plaintiffs and Appellants,

-v-

DUANE BITNEY and BETTY BITNEY,
husband and wife; EDGAR GRANRUD and
HELEN GRANRUD, husband and wife;
and FLATHEAD COUNTY, MONTANA, a
political subdivision of the State
of Montana, by and through its Board
of County Commissioners,

        Defendants and Respondents.

**FILED**

DEC 22 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
                In and for the County of Flathead,
                The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

        Patrick M. Springer, Kalispell, Montana

        For Respondents:

        M. Dean Jellison, Murphy, Robinson, Heckathorn &
        Phillips, Kalispell, Montana (Bitneys), James C.
        Bartlett, Hash, O'Brien & Bartlett, Kalispell,
        Montana (Granruds), Dennis J. Hester, Deputy
        Flathead County Attorney, Kalispell, Montana

Submitted on Briefs:  November 10, 1993

Decided:  December 22, 1993

Filed:

<u>                                </u>
              Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Plaintiffs/Appellants appeal an order of the Eleventh Judicial District Court, Flathead County, granting summary judgment to the defendants and denying plaintiffs' motion to alter or amend that judgment. We reverse.

The issues on appeal are as follows:

1. Does the Covenant to Dedicate, entered into by the defendants in 1975, run with the land?

2. Does the eight-year statute of limitations bar the plaintiffs' cause of action?

3. Did the District Court err in granting summary judgment in favor of the defendants?

In 1975, the defendants Edgar and Helen Granrud and Duane and Betty Bitney (the defendants) owned certain real property in Flathead County known as Stillwater Terrace, Unit 2 (Unit 2). The defendants applied for summary review of their subdivision application on February 18, 1975, and a summary review report was subsequently prepared. On May 19, 1975, the defendants entered into a "Covenant to Dedicate" with Flathead County and its Board of County Commissioners. This document provided, in pertinent part:

> . . . in consideration of the Board of County Commissioners of Flathead County, Montana, approving the covenantors map or plat of Stillwater Terrace, Unit 2 . . . the Covenantors agree in the future to donate as a County Road [portions of Lots 8 and 9]. Covenantors agree to donate the beforementioned Easterly 60 feet of Lots 8 and 9 of Stillwater Terrace, Unit 2, 233.54 feet in length in the future if the Covenantee will agree to approve the Stillwater Terrace, Unit 2 map for recording.

The Covenantors further agree for the consideration

2

before stated that any future conveyance of Lots 8 or 9 of Stillwater Terrace, Unit 2, Flathead County, Montana, will be subject to the terms of this Agreement, and the Covenantors further agree that they will improve the Easterly 60 feet of Lots 8 and 9 of Stillwater Terrace, Unit 2 said 60 foot section being 233.54 feet in length, and that such improvements on the portions of Lots 8 and 9 will comply with the standards for County Roads. . . .

The same day, the Board of County Commissioners accepted the plat for Unit 2 subject to the "restrictive covenants to dedicate."

Thereafter, on June 12, 1975, the plaintiff Shirley Scherpenseel purchased Lot 9 of Unit 2 from the Granrud defendants. Although not in the record, it is alleged that, on July 28, 1975, the plaintiffs Robert and Theresa Eickert purchased Lot 8 in Unit 2 from the Granrud defendants, and the defendants have not denied this allegation.

On July 31, 1990, the plaintiffs made a formal demand to the defendants requesting that they perform in accordance with the Covenant to Dedicate. On July 8, 1991, the plaintiffs filed a complaint against the defendants, alleging that they had an obligation to construct a road abutting the plaintiffs' property to county specifications. The plaintiffs also sued Flathead County, requesting that, after the road was constructed, the county be required to accept and maintain that road as a county road.

On October 9, 1991, the plaintiffs filed a Motion for Determination of Plaintiffs' Standing to Seek Declaratory Relief. On December 10, 1991, the District Court issued an order finding that the plaintiffs had standing to pursue the action. Thereafter, on September 30, 1992, the Bitney defendants filed a Motion for Summary Judgment. Although the other defendants did not file

3

similar summary judgment motions, the Bitneys' motion was apparently considered to be inclusive of all defendants. On March 15, 1993, the District Court granted summary judgment in favor of all the defendants on the basis that the plaintiffs' action was time-barred by the statute of limitations. On March 26, 1993, the plaintiffs filed a Motion to Alter or Amend Order Granting Summary Judgment, which was denied by the District Court on April 26, 1993. From the March 15, 1993 and April 26, 1993, orders, the plaintiffs appeal.

Our standard in reviewing a grant of summary judgment is the same as that initially utilized by the district court. McCracken v. City of Chinook (1990), 242 Mont. 21, 24, 788 P.2d 892, 894. Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.

## I - COVENANT RUNNING WITH THE LAND

The plaintiffs contend that the Covenant to Dedicate runs with the land, thus benefitting their property and binding the defendants to make the agreed-upon road improvements. We agree.

It is undisputed that, in 1975, when the subdivision plat and Covenant to Dedicate at issue here were accepted by the Board of County Commissioners and were respectively filed and recorded in Flathead County, the subdivision and plat were subject to the requirements of the Montana Subdivision and Platting Act (the Act), §§ 11-3859, et seq., RCM, 1947, as amended, (now §§ 76-3-101, et seq., MCA).

4

The purposes of the Act were set forth at § 11-3860, RCM, 1947, as amended, (now § 76-3-102, MCA), as follows:

It is the purpose of this act to promote the public health, safety, and general welfare by regulating the subdivision of land; to prevent overcrowding of land; to lessen congestion in the streets and highways; to provide for adequate light, air, water supply, sewage disposal, parks and recreation areas, ingress and egress, and other public requirements; to require development in harmony with the natural environment; to require that whenever necessary, the appropriate approval of subdivisions be contingent upon a written finding of public interest by the governing body; and to require uniform monumentation of land subdivisions and transferring interests in real property by reference to plat or certificate of survey. (emphasis added)

With minor amendments not at issue here, those purposes have remained in the Act to the present.

Under the statutory definition in place in 1975, a subdivision was a division of land which created one or more parcels containing less than twenty acres. Section 11-3861(12), RCM, 1947, as amended. That remained true at all times pertinent to this litigation. See § 76-3-103(15), MCA.

In this case, the warranty deed from the Granruds to Shirley Scherpenseel described the real property as follows:[1]

Lot 9 of Stillwater Terrace - Unit 2, as shown on the plat or map thereof on file and of record in the office of the Clerk and Recorder of Flathead County, Montana.

The plat referred to in this real property description is the one accepted by the Board of County Commissioners on May 19, 1975 and

---

[1] We note that the record in this case has not been extensively developed; for example, the Eickerts are named plaintiffs, but their deed of conveyance is not in the record. However, this opinion applies to them with equal weight, assuming that their deed contains the same or similar language as the deed from the Granruds to Shirley Scherpenseel.

5

subsequently filed. The plat was accepted after the Covenant to Dedicate was executed by the defendants and "in consideration of the Board of County Commissioners of Flathead County, Montana, approving the covenantors map or plat of Stillwater Terrace, Unit 2."

Section 11-3870(3), RCM, 1947, as amended, (now § 76-3-304, MCA) provided in 1975, and still provides that:

> The recording of any plat made in compliance with the provisions of this act [now referred to as chapter] shall serve to establish the identity of all lands shown on and being a part of such plat. Where lands are conveyed by reference to a plat, the plat itself or any copy of the plat properly certified by the county clerk and recorder as being a true copy thereof, shall be regarded as incorporated into the instrument of conveyance and shall be received in evidence in all courts of this state.

Section 11-3869, RCM, 1947, as amended, (now § 76-3-306, MCA), provided in 1975, and still provides, that:

> All covenants shall be considered to run with the land, whether marked or noted on the subdivision plat or contained in a separate instrument recorded with the plat.

In this case, the Covenant to Dedicate was a separate instrument which was recorded with the Clerk and Recorder. Although not in the record, the plaintiffs also contend that the Covenant to Dedicate is noted on the recorded plat, and the defendants have not denied this contention. This contention is supported by the Board of County Commissioners' minutes, dated May 19, 1975, which state that the plat of Unit 2 was accepted "with restrictive covenants to dedicate."

Accordingly, we hold that, under the above-cited provisions of the Act, the Covenant to Dedicate at issue here clearly was and is

6

one running with the land for the benefit of the plaintiffs and binding upon the defendants and, further, that the covenant was incorporated in plaintiffs' deed of conveyance by operation of law.

Ruling to the contrary, the District Court relied solely on the case of Majers v. Shining Mountains (1986), 219 Mont. 366, 711 P.2d 1375, in granting summary judgment to the defendants. However, Majers is not on point. In that case, the defendant subdivided a 7,000 acre ranch. In order to sell the lots, the defendant prepared and filed subdivision plat maps. These plats were filed prior to the effective date of the Montana Subdivision and Platting Act and were not subject to its provisions. The plaintiffs purchased lots within the subdivision and allegedly were told by the defendant's personnel that roads would be constructed and maintained by the defendant and that a dam would be constructed across a creek to form a lake suitable for fishing and other recreational pursuits. When the plaintiffs requested that the defendant construct the roads, the defendant refused. The plaintiffs then filed an action alleging an implied covenant based on the verbal representations allegedly made by the defendant's personnel. Majers, 711 P.2d at 1376. We held that the plats themselves did not give rise to a promise to construct roads, and we remanded for a determination of what verbal representations were made when the defendant sold the lots to the plaintiffs. Majers, 711 P.2d at 1378. We also held that the appropriate statute of limitations on an implied covenant arising from the use of written documents was eight years, the limitation for actions based on a

7

written contract. Majers, 711 P.2d at 1378-79.

We disagree with the District Court's conclusion that Majers is "very similar" to the case at hand. First, the subdivision and plat at issue in Majers were not subject to the Montana Subdivision and Platting Act, as are the subdivision, plat and covenant at issue in the present case. Second, Majers dealt with oral representations giving rise to an implied covenant. In the case at hand, an express, written covenant was executed and recorded. Therefore, we conclude that Majers is not sufficiently similar to the instant case so as to warrant reliance thereon.

In passing, we note that the Board of County Commissioners' minutes refer to the covenant at issue as a "restrictive" covenant. A restrictive covenant is defined as a "[p]rovision in a deed limiting the use of the property and prohibiting certain uses." Black's Law Dictionary 1182 (5th ed. 1979). On the other hand, an affirmative covenant is defined as a covenant "in which the party binds himself to the existence of a present state of facts as represented or to the future performance of some act." Black's Law Dictionary 327 (5th ed. 1979). We conclude that, in actuality, the covenant at issue here is an affirmative covenant, instead of a restrictive covenant, notwithstanding the reference in the Board of County Commissioners' minutes.

## II - STATUTE OF LIMITATIONS

Plaintiffs filed their action in 1991, some sixteen years after purchasing their properties from the Granruds, but within eleven months of demanding, in writing, that the Bitneys and

8

Granruds perform in accordance with the Covenant to Dedicate. The District Court ruled that plaintiffs' cause of action was time-barred by the eight-year statute of limitations provided for in § 27-2-202, MCA. The plaintiffs contend that their action is not time-barred by the statute of limitations. We agree with the plaintiffs.

Section 27-2-202, MCA, provides that an action upon any obligation founded upon an instrument in writing must be commenced within eight years. We have previously held that a deed constitutes a contract founded upon a written instrument for purpose of invoking the eight-year statute of limitations applicable to written contracts. Neils v. Deist (1979), 180 Mont. 542, 545-46, 591 P.2d 652, 654-55. Similarly, we have applied the eight-year statute of limitations to cases involving covenants. See, for example, Majers, 711 P.2d at 1378-79; U.V. Industries, Inc. v. Danielson (1979), 184 Mont. 203, 228, 602 P.2d 571, 586 (action to enforce an implied covenant in an oil and gas lease). Accordingly, the eight-year statute of limitations is applicable here to an action to enforce an affirmative, written covenant running with the land incorporated by operation of law in plaintiffs' deed of conveyance.

However, while the eight-year statute of limitations is the appropriate statute, we must, nevertheless, determine when the eight-year limitations period began to run in this case.

The plaintiffs contend that the statute of limitations did not begin to run until they made a demand for performance. The

9

defendants argue that the eight-year limitations period began to run on May 19, 1975, the day the Covenant to Dedicate was signed.

This is an issue of first impression in Montana. What little case law there is from other jurisdictions is annotated at 17 ALR 2d 1251. Those cases, however, in addition to being relatively old, are not factually analogous to the instant case, nor do such authorities consider the statute of limitations question in the context of the requirements of a land use law such as the Act.

As a point of departure, however, we note that other courts have generally taken one of three different approaches in determining when a statute of limitations begins to run on an action to enforce an affirmative, written covenant running with the land. One approach holds that the statute of limitations does not begin to run until an actual demand for performance is made. A second approach modifies the first by requiring, through application of the doctrine of laches to old, stale or untimely claims, that the demand be made within a reasonable period of time. A third approach dispenses with the necessity for a demand by taking the position that there is a continuing breach so that a new cause of action arises from day to day.

Taking into consideration the facts of this case, our State's comprehensive scheme of land use laws and regulations, and Montanans' unique inalienable right to a clean and healthy environment embodied in Article II, Section 3, of our Constitution, we conclude that the first approach above-mentioned best effectuates the purposes and public policy of the Act, while,

coincidentally, providing a definite and easily determinable time frame within which actions must be commenced to enforce affirmative, written covenants running with the land.

As in this case, developers of real property often enter into affirmative, written covenants and agreements as a part of the subdivision process in order to obtain the approval of the governing body to file a subdivision plat. In many cases, roads and other improvements required by the local government, by applicable laws or rules and/or by the developer's covenants and agreements are not made immediately, but, rather, are constructed over a period of time as parcels or units of the subdivision are sold.

When developers fail to timely construct roads and improvements agreed upon or otherwise required, innocent purchasers of the property, and in some instances the local government and its taxpayers, are left to shoulder the burden and expense involved in constructing and financing the roads and improvements that were properly the responsibility of the developers.

Worse, the purposes of the Act, as set forth at length in § 76-3-102, MCA, are frustrated to the ultimate detriment of the public, the environment and the orderly, safe and harmonious development of Montana's lands. Simply put, public policy, as expressed in the Act, demands that real estate developers be strictly held to their covenants and agreements, and that they not be allowed to gain the advantage of their failure to perform by the fortuitous passage of time.

11

Accordingly, we hold that the eight-year statute of limitations in which to commence an action to enforce an affirmative, written covenant running with the land does not begin to run until the date on which an actual demand for performance is made.

In this case, the plaintiffs demanded performance in writing on July 31, 1990, and filed a formal complaint on July 8, 1991. Based on the rule, set forth above, that the eight-year statute of limitations did not begin to run until the demand for performance was made, we hold that the plaintiffs' complaint, filed on July 8, 1991, was not time-barred by the eight-year statute of limitations of § 27-2-202, MCA.

### III - SUMMARY JUDGMENT

The plaintiffs contend that the District Court erred in granting summary judgment to the defendants. We agree.

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. In this case, the defendants acknowledged that there was no genuine issue of material fact when they moved for summary judgment. However, we cannot agree that the defendants are entitled to judgment as a matter of law. Clearly, they are not.

As we held above, the Covenant to Dedicate is an affirmative, written covenant running with the land and, as such, is meant to benefit plaintiffs' property. Therefore, there is an obligation on the defendants to perform pursuant to the terms of their covenant.

12

In addition, the plaintiffs' action is not time-barred by the applicable eight-year statute of limitations. Therefore, we hold that the District Court erred in granting summary judgment to the defendants.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

13