[Nos. B083616, B086456. Second Dist., Div. Three. Jan. 22, 1996.]

ERIK K. CUTUJIAN, Plaintiff and Appellant, v.
BENEDICT HILLS ESTATES ASSOCIATION, Defendant and
Respondent.

COUNSEL

David M. Browne, Rowell & Tessier and John D. Rowell for Plaintiff and Appellant.

Gary M. Gitlin for Defendant and Respondent.

OPINION

**CROSKEY, J.**—In these consolidated appeals, Eric K. Cutujian appeals from a judgment of dismissal after the sustaining without leave to amend of a demurrer to his third amended complaint for nuisance, and from an order after judgment awarding $30,000 in attorney fees, plus costs, to the defendant, Benedict Hills Estates Association (the Association). The trial court's order was based on the conclusion that Cutujian's complaint had not been filed within the relevant statutory period.

However, we conclude that the gravamen of Cutujian's claim is based on the Association's violation of a covenant running with the land and the statute of limitations did not commence to run until April of 1988 when Cutujian made a demand for performance under the covenant. Since Cutujian filed his complaint less than two years later, his action is timely and was improperly dismissed. We therefore reverse both the judgment and the award of attorney fees and costs.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1988, Cutujian and his brother jointly purchased a partially improved residential lot in Benedict Hills Estates (hereafter, BHE), a common interest

residential development in the County of Los Angeles, located between the cities of Beverly Hills and Los Angeles. The development was subject to a recorded declaration of conditions, covenants and restrictions (CC&R's) and was governed by the Association. Among the Association's duties under the CC&R's is the maintenance of natural and manmade slopes and corresponding drainage ditches both in the common areas and within individual lots

BHE was originated in 1976, when the first developer subdivided and graded 229 building pads on 2 tracts of real property located south of Mulholland Drive and east of Benedict Canyon in the County of Los Angeles. The Association was formed shortly after the development began; the CC&R's were recorded on January 21, 1976. At the time this action commenced, residences had been built on approximately 90 percent of the 229 lots.

Sometime between 1976 and 1978, a surface slump occurred on the fill slope in the lot which later was purchased by Cutujian. From that time until Cutujian purchased the lot, the lot remained vacant, and no owner attempted to build on it.

Cutujian purchased his lot, located at 3226 Hutton Drive, in early 1988 from Kathleen McCarthy, who apparently purchased it from one of the developers. On April 4, 1988, while escrow was pending, Cutujian demanded that the Association repair the damage to the slope on his lot, as required by the CC&R's. The Association did not positively refuse to repair the slump, but stated it believed the slump could be repaired for approximately $3,000, a cost which Cutujian believed to be unrealistically low. After several discussions of costs and the feasibility of repairing the slump at any particular cost, Cutujian concluded the Association was not going to do the repair. He therefore proceeded to have the slump repaired at his own expense and thereafter initiated the present action to recover his costs.

Cutujian filed his original complaint on August 8, 1989. After the sustaining of a demurrer, Cutujian filed a first amended complaint, and thereafter, upon stipulation by the parties, he filed a second amended complaint on April 29, 1992.

The second amended complaint sought damages against the Association for (1) breach of the CC&R's which govern BHE, and (2) negligence. On November 9, 1993, the Association moved for summary judgment, alleging Cutujian's action was barred by the statute of limitations.

While the motion for summary judgment was pending, Cutujian successfully sought leave of the court to file a third amended complaint. In the third

amended complaint, Cutujian recast his action as one for damages for a continuing nuisance arising from violation of an equitable servitude, but he pled essentially the same facts as were pled in previous pleadings. The Association demurred, again raising the statute of limitations.

The trial court found the action was barred by the statute of limitations and sustained the demurrer to the third amended complaint without leave to amend. A judgment of dismissal was entered on March 17, 1994. The trial court thereafter awarded costs and attorney fees to the Association as the prevailing party in the action. These timely appeals followed.

CONTENTIONS ON APPEAL

Cutujian contends that: (1) his third amended complaint was for a continuing nuisance, not for breach of a written instrument; (2) his claim for damages was filed within the time allowed for an action for continuing nuisance; (3) even if his claim is in truth a claim for breach of a written instrument, it is nevertheless timely, because the instrument created covenants running with the land;[1] (4) his claims cannot in fairness be affected by the inaction of his predecessors in interest; (5) the trial court awarded excessive and unauthorized attorney fees to the Association.

DISCUSSION

1. *Standard of Review*

The scope of our review is limited to a determination of whether the Association's demurrer was erroneously sustained without leave to amend and whether such a determination was an abuse of discretion. All material facts pleaded in the complaint and those which arise by reasonable implication are thus deemed true. We determine the legal sufficiency of the alleged facts to state a cause of action. (*Hendy* v. *Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1]; *Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490, 496, fn. 2 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447].) When a demurrer is sustained without leave to amend, we

---

[1]This contention was raised for the first time in a supplemental letter brief, filed after arguments at the request of this court. In pre-argument briefing, the parties focused only upon the question of whether Cutujian stated a cause of action for a continuing nuisance. However, at the time of oral argument, the court questioned both parties as to the significance of certain authorities, discovered through the court's independent research, which suggested that the facts alleged in Cutujian's complaint might constitute a valid and timely cause of action for breach of the CC&R's. In response to such questioning, both parties requested and were granted leave to address the court's questions by way of supplemental letter briefs. Such supplemental briefing has been received and considered.

decide whether there is a reasonable probability that the defect can be cured by amendment; if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. (*Leibert* v. *Transworld Systems, Inc.* (1995) 32 Cal.App.4th 1693, 1701 [39 Cal.Rptr.2d 65].)

### 2. *Commencement of Statute of Limitations for Enforcement of Covenant in Recorded CC&R's*

Cutujian contends the trial court erred in finding his action time-barred, because the surface slump on his property was a continuing nuisance which the Association had a duty to abate, pursuant to the CC&R's. The Association contends that (1) Cutujian was bound by admissions, which Cutujian made in previous pleadings, that the surface slump at 3226 Hutton Drive occurred between 1976 and 1978; (2) the slump was not an abatable nuisance; and (3) consequently, Cutujian's action is barred by the three-year statute of limitations governing an action for permanent nuisance. (Cf. *Spar* v. *Pacific Bell* (1991) 235 Cal.App.3d 1480, 1485 [1 Cal.Rptr.2d 480].) In the alternative, the Association argues that Cutujian's third amended complaint was a sham pleading, filed in order to avoid the effect of his previous admissions, which the Association contends conclusively established that the action was barred by the four-year statute of limitations for actions on a written instrument (Code Civ. Proc., § 337) or the three-year statute of limitations for injury to real property (Code Civ. Proc., § 338, subd. (b)).

■ As we shall explain, we conclude the statute of limitations to enforce the disputed provision of the CC&R's began to run in 1988, when Cutujian demanded that the Association fulfill its obligation to repair the slope damage at 3226 Hutton Drive. Consequently, we do not find Cutujian's action to be time-barred.

■ Unless they are unreasonable, the CC&R's in the declaration governing a common interest development may be enforced as equitable servitudes and as covenants running with the land. (Civ. Code, §§ 1354, subd. (a), 1460 et seq.; *Nahrstedt* v. *Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 375-376 [33 Cal.Rptr.2d 63, 878 P.2d 1275].) The CC&R's benefit and bind the owners of all separate interests in the project. (Civ. Code, § 1354, subd. (a).) Unless the declaration provides otherwise, CC&R's may be enforced by any owner of a separate interest, by the association or by both. (Civ. Code, §§ 1354, 1460 et seq.; *Nahrstedt* v. *Lakeside Village Condominium Assn.*, *supra*, 8 Cal.4th at pp. 375-376; *Franklin* v. *Marie Antoinette Condominium Owners Assn.* (1993) 19 Cal.App.4th 824, 832, fn.

11 [23 Cal.Rptr.2d 744]; see generally, Sproul & Rosenberry, Advising Cal. Condominium and Homeowners Associations (Cont.Ed.Bar 1991) § 6.43, p. 297; 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 328, p. 529.) A party who is damaged by a violation of the CC&R's may seek money damages. (*Mackinder* v. *OSCA Development Co.* (1984) 151 Cal.App.3d 728, 737 [198 Cal.Rptr. 864]; see generally, Sproul & Rosenberry, Advising Cal. Condominium and Homeowners Associations, *supra*, § 7.37, p. 347.) The statute of limitations for such an action is that for an action arising from a written instrument and is four years. (Code Civ. Proc., § 337.)

 The issue in this case is not *what* statute of limitations applies to Cutujian's action, but *when* the statute of limitations commenced to run. No California statute or judicial decision directly addresses either the question of when the statute commences for an action to enforce CC&R's, or the more general question of when the statute commences for enforcement of a covenant running with the land which requires the performance of an affirmative act. As we have observed above, CC&R's are enforceable as covenants running with the land. (*Nahrstedt* v. *Lakeside Village Condominium Assn.*, *supra*, 8 Cal.4th at pp. 375-376; *Franklin* v. *Marie Antoinette Condominium Owners Assn.*, *supra*, 19 Cal.App.4th at p. 832, fn. 11.) Courts in other jurisdictions have addressed the question of when the statute of limitations commences for enforcement of such covenants. These courts have generally concluded that the statute does not commence until there is a demand for performance. (See, e.g., *Scherpenseel* v. *Bitney* (1993) 263 Mont. 68 [865 P.2d 1145, 1150]; *Louisville & Nashville R. Co.* v. *Pierce* (1950) 313 Ky. 189, 195 [230 S.W.2d 430, 17 A.L.R.2d 1244]; *Parks* v. *Hines* (1934, Tex.Civ.App.) 68 S.W.2d 364, 367-368, affd. by 128 Tex. 289 [96 S.W.2d 970, 973].) Some courts have required that the demand be made within a reasonable time. (See, e.g., *Hustina* v. *Grand Trunk Western R. Co.* (1942) 303 Mich. 581 [6 N.W.2d 902, 905]; *Whitney* v. *Cheshire R. Co.* (1911) 210 Mass. 263 [96 N.E. 676, 679].) Some courts have enforced affirmative covenants without discussion of demand on the theory that there was a continuous breach so that a new cause of action arose from day to day as long as the covenant was not performed. (See, e.g., *Carnegie Realty Co.* v. *Carolina C&O Ry. Co.* (1916) 136 Tenn. 300 [189 S.W. 371, 373]; *Atlanta K. & N. Ry. Co.* v. *McKinney* (1906) 124 Ga. 929 [53 S.E. 701, 704].)

In *Scherpenseel* v. *Bitney*, *supra*, 865 P.2d 1145, the single recent case of which we are aware which discusses the commencement of the statute of limitations to enforce an affirmative covenant running with the land, the Montana Supreme Court analyzed the few existing cases on the subject. The

court observed, as have we, that previous cases have taken three separate approaches: (1) holding that the statute commences upon an actual demand for performance; (2) holding that the statute commences upon a demand for performance, but requiring that the demand be made within a reasonable time; (3) holding that, whether or not there is a demand for performance, there is a continuing breach for as long as the duty is not performed, so that a new cause of action arises from day to day. (865 P.2d at p. 1149.)

The action in *Scherpenseel* was an action by a purchaser of real property to enforce a developer's covenant to dedicate and construct a road on the property, and the county's duty to accept and maintain the road. (865 P.2d at p. 1146-1147.) In that context, the Montana Supreme Court concluded the better rule required that the eight-year statute of limitations to enforce an affirmative covenant running with the land commence when the plaintiffs demanded construction of the road, although the covenant was made more than eight years before the demand. (*Id.* at pp. 1149-1150.)

One California decision, *Strosnider v. Pomin* (1942) 52 Cal.App.2d 745 [126 P.2d 915], impliedly adopted this same rule. In *Strosnider*, the Pomins conveyed certain land to Strosnider's predecessor in interest in 1913. By a separate agreement, the Pomins (1) conveyed an easement for a 40-foot right of way over land which they retained, (2) affirmatively covenanted to open and maintain a road over the burdened property along the right-of-way, and (3) covenanted to deed, upon demand, an additional small triangular parcel. (*id.* at p. 746.) From 1913 until nearly the time of the lawsuit, the road was not built; indeed, from time to time, the Pomins erected buildings which encroached upon the right-of-way. However, in 1923, as promised, the Pomins conveyed the triangular parcel, and included in the deed the promised right-of-way, " 'to be used in common by the parties hereto, and their heirs, executors and assigns.' " (*Id.* at pp. 746-747.) In addition, in 1937, a son and heir of the Pomins, Ernest Pomin, made an oral promise to Strosnider, who by then had acquired the property, to perform the covenant to open and improve the promised road if Strosnider would dismiss a quiet title action which he had filed respecting the easement. (*Id.* at p. 747.)

Ernest did, in fact, remove the encroachments from the right-of-way and improve and open the road. However, he later erected a fence across the road and refused to allow Strosnider to pass. When Strosnider sued, Ernest raised, among other defenses, the statute of limitations. (52 Cal.App.2d at pp. 747-748.) The court concluded the easement and right to a road had not been extinguished by the failure of Strosnider and his predecessors to (1) use the easement, (2) object to the construction of encroachments on the easement,

or (3) demand construction of the road for many years after the original agreement. The court considered the 1923 deed to be evidence that the Pomins acknowledged the easement holder's right to demand the road *when a need for it arose.* The court observed that the road had apparently not become necessary until shortly before the dispute arose. Where demand for the road was made at that time, and suit was commenced within the allowed time after the demand, the lawsuit was not barred by the statute of limitations. (*Id.* at pp. 749-750.)

Here, the CC&R's governing the BHE common interest development stated that they would "run with the Property and Additions," and would be binding "upon all parties having or acquiring any right, title or interest in the Property Additions. . . ." The CC&R's imposed upon the Association an affirmative duty to maintain the slope areas in the development in a neat and safe condition, a duty which included "the repair and replacement of landscaping and improvements *when necessary or appropriate.* . . ." (Italics added.) It would seem to go without saying that repair of the building pad on the 3226 Hutton Drive lot was not "necessary or appropriate" until a purchaser of the lot actually was ready to build a residence. The pad was damaged, apparently by rainfall, before any purchaser was ready to build. Indeed, over 10 years passed before any owner seriously commenced construction. During all of that time, the Association had a duty to repair the building pad. However, there was little sense in doing so at times when no construction was planned. Nor was there any demand that the damaged pad be repaired. However, immediately upon purchasing the lot with an intent to build—indeed, while escrow was pending—Cutujian observed the damage to the building pad and demanded that it be repaired in accordance with the CC&R's.

We believe that the most reasonable rule of law is the one adopted by the Montana Supreme Court in *Scherpenseel* v. *Bitney, supra,* 865 P.2d 1145, that the statute of limitations to enforce affirmative covenants running with the land, and, in particular, duties included in a declaration of CC&R's, commences when a demand for performance is made. Under this rule, Cutujian's lawsuit was timely.

■ The purpose of statutes of limitations is to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. (*Telegraphers* v. *Ry. Express Agency* (1944) 321 U.S. 342, 348 [88 L.Ed. 788, 792, 64 S.Ct. 582].) The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation, and the right to be free of stale claims in time comes to

prevail over the right to prosecute them. (*Ibid.*) ▇ The sound policies underlying statutes of limitations are not circumvented where, as here: (1) the defendant was at all times under an affirmative duty created by a recorded declaration of CC&R's; (2) the duty was expressly defined as arising "when necessary or appropriate"; (3) immediately after performance of the duty became necessary, by reason of a lot owner's intent to begin construction of a residence, the lot owner demanded performance; and (4) the defendant, with knowledge of its duty, failed to perform it.

Indeed, if the statute of limitations did commence between 1976 and 1978, and did run by 1982, as the Association argues, the result would certainly be unjust to Cutujian; during that entire time, the Association's Board was controlled by the developers of BHE, one of whom was Cutujian's predecessor in interest, Jerry Oren, or one of Oren's companies. With knowledge of the slump and the need to repair it, and while he was represented on the Association's board, Oren determined not to repair the slump or demand that the Association repair it. Under these circumstances, Cutujian rightly contends it would be unfair if Oren's inaction could foreclose Cutujian's right to performance of the Association's duties. We thus conclude it was when Cutujian demanded that the slope failure on his property be repaired, and the Association failed to comply with the demand, that the statute of limitations began to run for commencement of action for breach of the covenant to repair.

Cutujian commenced this action in August of 1989, well within four years from the date of his demand for performance. The action was thus commenced within the limitation of time in which to file an action to enforce provisions of a declaration of CC&R's.

Although we have reached this conclusion on appeal, Cutujian himself was apparently not confident during the proceedings below that his action was timely. Consequently, before the trial court ruled on the Association's motion for summary judgment, Cutujian recast his cause of action for breach of the CC&R's as one for a continuing nuisance.[2] He must be given an opportunity to amend his complaint to reinstate the cause of action for

---

[2]The Association contends that by this modification Cutujian abandoned any claim based on a breach of the CC&R's and thus has waived any right to replead that claim. We summarily reject this argument. The gravamen of Cutujian's cause of action, however labeled, is based upon the violation by the Association of the duties imposed upon it by the CC&R's. The essential facts underlying that claim have been repeatedly alleged in each of the Cutujian's several pleadings. (See generally, *Bay Cities Paving & Grading, Inc.* v. *Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 860 [21 Cal.Rptr.2d 691, 855 P.2d 1263].) In any event, in light of our conclusion regarding the commencement of the statute of limitations, the

breach of the CC&R's. (*Leibert* v. *Transworld Systems, Inc., supra,* 32 Cal.App.4th at p. 1701.)[3]

### 3. *Action for Continuing Nuisance*

■ It is settled that where conduct which violates a duty owed to another also interferes with that party's free use and enjoyment of his property, nuisance liability arises. (Civ. Code, § 3479; *Lussier* v. *San Lorenzo Valley Water Dist.* (1988) 206 Cal.App.3d 92, 100 [253 Cal.Rptr. 470].) Under this definition of nuisance, the Association's violation of its duty to Cutujian under the CC&R's gave rise to liability for the nuisance caused by the slump, which plainly interfered with Cutujian's use of the land. Moreover, the CC&R's governing BHE provide that any violation of a duty created by the CC&R's will give rise to an action for nuisance. It also appears that the nuisance was abatable, inasmuch as Cutujian was able to abate it. Consequently, it can reasonably be deemed a continuing nuisance for which a new cause of action arises each day on which the nuisance continues. (*Phillips* v. *City of Pasadena* (1945) 27 Cal.2d 104, 107-108 [162 P.2d 625]; *Mangini* v. *Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1142-1145 [281 Cal.Rptr. 827].)

Under the above principles, it would appear Cutujian has stated a timely and viable cause of action for a continuing nuisance. As a practical matter, this cause of action is identical to a cause of action for breach of an affirmative covenant running with the land, brought under the theory that breach of such a covenant is a continuous breach giving rise to a new cause of action from day to day as long as the covenant is not performed. Cutujian's nuisance cause of action is thus essentially redundant in view of

---

Association is not in any way prejudiced by Cutujian's reassertion of his claim based on a violation of the CC&R's.

[3]When Cutujian filed his supplemental letter brief on October 27, 1995, he attached a proposed fourth amended complaint which alleges the Association violated the CC&R's and failed to correct an ongoing and continuing nuisance, in that: (1) the CC&R's governing BHE require the Association to maintain the slopes in the development; (2) sometime prior to 1980, a surface slump occurred on property that was subsequently purchased by Cutujian; (3) in 1988, when Cutujian purchased the lot, he demanded that the slump be repaired; and (4) the Association failed and refused to repair the slump. Cutujian had the burden on appeal of establishing that his complaint can be amended to state a cause of action. (*Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386 [272 Cal.Rptr. 387].) The proposed amended complaint sufficiently meets this burden.

our conclusion that his cause of action for breach of the CC&R's was timely.[4]

### 4. *Attorney Fees*

In a postjudgment hearing, the trial court found the Association to be the prevailing party and awarded attorney fees accordingly. In view of our reversal of the judgment, the order awarding attorney fees must also be reversed.

## DISPOSITION

The judgment of dismissal and the postjudgment order awarding attorney fees are reversed. The matter is remanded for further proceedings consistent with the views in this opinion. Costs on appeal are awarded to Cutujian.

Klein, P. J., and Kitching, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 15, 1996.

---

[4]In addition to its arguments on the main issues in this appeal, the Association raises the following three contentions: (1) the Association's failure to repair the slump caused Cutujian no damage, as he paid a lower price for his lot than would have been demanded, had it not been for the slump; (2) the Association had no duty to repair the slump, as it resulted from an act of God and was thus subject to an exculpatory clause in the CC&R's; (3) Cutujian's complaint was subject to demurrer, because he failed to allege facts establishing his standing to sue. The Association's arguments regarding Cutujian's standing to sue and the application of the exculpatory clause in the CC&R's are not properly before us, as neither was addressed by the trial court. Indeed, the Association concedes it did not even raise the issue of the exculpatory clause in the trial court. The Association's argument that Cutujian has been fully compensated for any costs which he incurred in repairing the slump is also not properly before us, because it goes to the issue of damages and cannot be resolved at the pleadings stage of the action. We emphasize that our ruling in this case is limited to resolving the dispute over the statute of limitations. We express no view on the merits of the action.